05 30067-MAP

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

---

Bruce Wilson, Individually & for the interests & welfare of Plaintiff's Children
351 Pleasant Street
Suite B . PMB 352
Hampshire County
Northampton, MA 01060,

**PLAINTIFF #1**

eminent energy promotions
bruce wilson, president
351 pleasant street
suite b . pmb 352
hampshire county
northampton . ma . 01060

**PLAINTIFF #2**

FILED
IN CLERK'S OFFICE
2005 MAR 14 P 2:43
U.S. DISTRICT COURT
DISTRICT OF MASS

versus

DOCKETED

**COMPLAINT**

Barbara Barra, Individually as Officer
Executive Vice President
Lee Hecht Harrison
50 Tice Boulevard
Bergen County
Woodcliff Lake, NJ 07677

**DEFENDANT #1**

Paul O'Donnell, Individually as Officer & Director
Chief Executive Officer
Lee Hecht Harrison
50 Tice Boulevard
Bergen County
Woodcliff Lake, NJ 07677

**DEFENDANT #2**

Lee Hecht Harrison, Corporately
50 Tice Boulevard
Bergen County
Woodcliff Lake, NJ 07677

**DEFENDANT #3**

---

## PARTIES

1. Plaintiff #1 is a resident of Hampshire County, Massachusetts and a citizen of the United States

2. Plaintiff #2 is a resident of Hampshire County, Massachusetts and a citizen of the United States

3. Defendant #1 is a resident of Bergen County, New Jersey and citizen of the United States

4. Defendant #2 is a resident of Bergen County, New Jersey and citizen of the United States

5. Defendant #3 is a resident of Bergen County, New Jersey and citizen of the United States

## JURISDICTION

6. This court has jurisdiction over this matter, including but not limited to:

    a. Title 42 . Chapter 21 . U.S.C. $ 1983

    b. diversity of residences; different states [Massachusetts, New Jersey, Connecticut & Delaware]

    c. damage to plaintiff's interests, along with amounts in contention, exceed $75,000 threshold

## FACTS

7. plaintiff and General Reinsurance Corporation, 695 East Main Street, Stamford, CT 06901 ["gen re"], plaintiff's former employer, are two of two signatories to an Agreement and General Release [the "agreement"] dated September 8, 2004 [Exhibit #1]

8. defendants are not signatories to the agreement

9. defendants agreed to provide plaintiff outplacement assistance services by way of a Professional Services Contract [the "contract"] embedded in the agreement as paragraph (2e)

10. defendants agreed to provide professional services to plaintiff independently, and apart from, other services and consideration provided to plaintiff by gen re, under the agreement [i.e. delivery of medical insurance benefits or life insurance services]

11. defendants are experienced, senior executives in the provision of professional outplacement and career services [Exhibit #4]

12. defendants and gen re are two of two signatories to the contract

13. plaintiff is not a signatory to the contract

14. the professional services contract, is an asset owned 100% by the plaintiff, along with ownership interests in other benefits, rights and assets in the agreement as a signatory to the agreement

15. plaintiff's ownership interests in the various assets provided by the agreement, each in their respective "stores of value", including the contract, are 100%, unencumbered, pledged or otherwise not garnished or limited in use or disposition

16. the term of the agreement is twelve months, from November 1, 2004 to October 31, 2005

17. the term of the contract is twelve months, from November 15, 2004 to November 15, 2005 [Exhibit #2]

18. the unused portion of the financial value of the professional services contract is represented by defendants to be $12,500 [Exhibit #3]

19. plaintiff submitted three requests to defendants, during the time period from November 15, 2004 to January 28, 2005, for a copy of the professional services contract

20. defendants have denied & refused all three plaintiff requests, all without explanation; therefore plaintiff has no evidence to validate the credibility of the contract's value [similar contracts are reported to have value many times what has been represented by defendants, often billing as much as $5,000 to $10,000 per month]

21. the agreement with gen re requires plaintiff grant a general release to General Reinsurance Corporation and its agents, from any and all claims, known and unknown, "as of the date of execution of the agreement and general release"

22. the referenced civil action arises from a claim occurring after the date of execution of the agreement, by an agent of General Reinsurance Corporation; therefore, the terms of the general release in the agreement do not apply to the current civil action, and plaintiff is not obligated to abide by those terms in this current action

23. defendants arbitrarily, unilaterally, without credible bases, and without consent of plaintiff, terminated their professional services contract on January 28, 005, representing approximately 20% of the time & value used under the contract, leaving 80% as the unused portion of the value of the contract [Exhibit #5]

24. plaintiff does not have standing to contest defendants' right to terminate the contract; plaintiff has no contract document evidencing the contract that might provide standing to do so

25. defendants arbitrarily, unilaterally without credible bases, and without consent of plaintiff, credited the unused portion of the professional services contract, plaintiff's asset, to plaintiff's former employer, General Reinsurance Corporation, rather than directly to plaintiff, as suggested and later requested

26. plaintiff disputes the *manner and method of the implementation* of defendant's termination decision, specifically, the unilateral assertion of ownership rights over plaintiff's asset (the unused portion of the professional services contract) exercised through the put back to gen re of the financial value of the asset, rather than direct delivery to plaintiff

27. this asset is owned by plaintiff, over which defendants invaded and trampled plaintiff's contractual property ownership right to the use of the asset, or any other action plaintiff deems necessary and appropriate

28. plaintiff relied on, and was becoming increasingly reliant on, during the time from contract inception, November 15, 2004 to date of termination, January 28, 2005 (the 20% expired), the value of the defendant's professional services, provided to plaintiff and plaintiff's business, by a three-person team, for the initiation, design, development and launch of a new, entrepreneurial program and for-profit business serving teens under a suicide prevention effort

29. plaintiff created the new business to provide income to support plaintiff, and to support plaintiff's children, upon termination of the agreement on October 31, 2005

30. plaintiff created the new business to be the vehicle by which plaintiff accumulates long-term wealth for plaintiff's children, thereby promoting their financial security and welfare

31. defendants actions compromised plaintiff's contractual property right to the professional services asset by falsely asserting unilateral ownership rights over its use, and put at risk the value of the asset by sending it back to gen re as a credit where it was previously known various orders had a high probability of compromising the value to plaintiff, damaging plaintiff's interests, and introducing a divergence in interests with gen re

32. loss of the asset, and loss of use of the asset, caused plaintiff to cease new program and business activities, suffering financial and economic losses due to lost business opportunities

33. defendants induced gen re, or gen re volunteered, to negotiate settlement of defendant's damages by cash compensation in the amount of $12,500 [Exhibit #3]

34. plaintiff agreed to enter the settlement agreement on conditions, one of which was that the value of the contract asset not be subjected to any garnishments, court orders or other levies excluding tax withholding [Exhibit #3, page 3 & Exhibit #9]

> "the value of the outplacement contract was not subject to any court orders applying to, or involving, gen re at its inception, or at any time thereafter, and should not, therefore, be subject to any such orders now"

35. in the settlement & internal payment administrative process, general reinsurance corporation implemented an erroneous deduction in the amount of a $3,583 garnishment by arbitrarily and unilaterally, reclassifying the asset from its store of value as a contract asset, to a store of value as cash compensation, thereby wrongly subjecting the asset to existing court orders [Exhibit #6]

36. the professional decisions of the defendants wrongly stripped plaintiff of plaintiff's use, and ownership, of the contract asset for a five week period of time, from date of termination, January 28, 2005, to date of settlement March 3, 2005, representing approximately 11% of the contract's financial value, as prorated for the fifty-two week term of the contract. Plaintiff's former employer, acting on behalf of defendants, wrongly implemented a 28% haircut, or deduction, on the gross amount, which is represented to be $12,500, or $3,583, resulting in net cash proceeds of $6,302.42 [Exhibit #7]

37. the haircut was implemented after plaintiff alerted former employer that the asset, in its "store of value" as a professional services asset 100% owned by plaintiff, as a signatory to the agreement, was not at the time of agreement inception, or at the time of the contract inception, or at any other time thereafter, subject to deductions or haircuts other than those for tax withholding

38. the actions of plaintiff's former employer, on behalf of defendants, have introduced a schism into the relationship of interests with plaintiff, creating a divergence of interests that were - previous to defendants' termination of the contract, and method of implementation of its termination decision - perfectly aligned

39. plaintiff is repulsed by the creation & emergence of a divergence of interests with his former employer, especially in view of plaintiff's responsibilities, parental and otherwise, to promote, defend and advance the financial security and welfare of plaintiff's children

40.  plaintiff requires perfect alignment of interests with former employer because former employer is providing cash payments during the term of the agreement to support plaintiff and plaintiff's children [Exhibit #8]; therefore, plaintiff rejected the settlement offer. Plaintiff has not negotiated the check for cash proceeds, evidencing no meeting of the minds on the settlement.

41. plaintiff's invitations to defendants to voluntarily settle the matter have been ignored

42. plaintiff's former employer disavowed any responsibility for resolving their internal payment administrative snafu in plaintiff's favor [Exhibit #6]

43. plaintiff moved to proactively resolve the schism of interests, to cure the defect in a manner that does not enlarge the divergence of interests already introduced, but in a manner that eliminates the divergence, so as not to put at risk the cash payments under the agreement

44. the appropriate and judicious solution to obliterating the newly-introduced schism of interests is to rightly align responsibility with behavior; therefore, first, gen re is to be excused for acting on behalf of defendants [i.e. by way of plaintiff's rejection of the settlement offer], and second, through the filing of this civil motion, plaintiff requests the court to order defendants to account for their behavior and decisions through payment of cash compensation to plaintiff for damages caused personally & professionally, an action it has willfully refused to implement to date, despite repeated requests from plaintiff, and even to the point of hiding their identity behind plaintiff's former employer in the settlement negotiations

45. plaintiff believes the behavior of defendants toward plaintiff has been reckless and negligent, and will continue unabated, placing at risk the interests of future clients; plaintiff believes only a court-imposed solution can effectively modify defendants' behavior. Plaintiff has observed the high degree of effectiveness of punitive damages in similar cases to successfully modify unprofessional behavior, by deterrence and discouragement of such behavior

## RELIEF & REMEDY

**Motion for Summary Judgment in the amount of $105,000 [one hundred five thousand united states dollars] against defendants and in favor of plaintiff**

**Before-tax cash compensation in the amount of $105,000, exclusive of taxes, allocated as follows:**

*Bruce Wilson, Individually & for the interests & welfare of Plaintiff's Children*
*$12,500, or true prorated dollar value of unused professional services contract*

*eminent energy promotions, Corporately*
*$12,500, or true prorated dollar value of unused professional services contract*
*$5,000 for lost program & business opportunities ($1,000 net profit per weekly promotional concert tours]*

*Punitive damages in the amount of $75,000*

**No action to be taken against General Reinsurance Corporation**

*plaintiff's interests are to remain cordial and perfectly aligned, for plaintiff's benefit and for the financial security and welfare of plaintiff's children*

**No replacement of professional services contract with another professional services contract or firm, including defendants' firm**

**Plaintiff #1**

**Signature**________________________________________

**Bruce Wilson**
**351 Pleasant Street**
**Suite B . PMB 352**
**Hampshire County**
**Northampton, MA 01060**

**413.262.8857 mobile**
**eminentenergy@yahoo.com**

**Plaintiff #2**

**Signature**________________________________________

**eminent energy promotions**
**bruce wilson, president**
**351 pleasant street**
**suite b . pmb 352**
**hampshire county**
**northampton . ma . 01060**

**413.262.8857 mobile**
**eminentenergy@yahoo.com**

AGREEMENT AND GENERAL RELEASE

General Reinsurance Corporation, with offices at 695 East Main Street, Stamford, CT 06901, (referred to throughout this Agreement as the "Company"), and Bruce L. Wilson ("Employee") agree that:

1.     Last Day of Employment. Employee's last day of employment with the Company is October 31, 2004 ("Termination Date").

2.     Consideration. In consideration for signing this Agreement and General Release and compliance with the promises made herein, the Company agrees as follows:

    a.     Inactive Status. Employee's last day of active employment is September 8, 2004 ("Last Day in Office"). Employee will be on inactive status for the period beginning on the Last Day in Office and ending on October 31, 2004, the Termination Date. During this period Employee will be on inactive status and will continue on payroll for salary and benefit purposes only. It is understood and agreed that while on inactive status, Employee will not perform and will owe no services to the Company and the Company owes no obligations to Employee other than as set forth in this Agreement.

    b.     Severance Pay. The Company agrees to pay to Employee severance pay benefits equal to one month of base salary at his/her normal rate of pay for each year of service, provided however, severance pay does not exceed a maximum of twelve (12) months base salary. That is, the Company promises to pay the Employee a total of $179,095.00 in semi-monthly installments for the period from November 1, 2004 through October 31, 2005 (the "Severance Pay Period"). All payments are to be made less appropriate taxes and deductions.

    c.     Medical and Dental COBRA Coverage. If Employee elects to continue medical and/or dental coverage under the Company's Group Medical and Dental Expense Plan in accordance with the continuation requirements of COBRA, the Company shall pay for a portion of the cost of said coverage beginning on the Termination Date and ending on the earlier of (i) the last day of the Severance Pay Period or (ii) the day Employee commences employment with an employer providing health benefits. The Employee's share of the cost of COBRA coverage during the Severance Pay Period shall be an amount equal to the cost of coverage for an active employee electing the same benefit coverage option(s) elected by Employee. Thereafter, Employee shall be entitled to elect to continue such COBRA coverage for the remainder of the COBRA period, at his/her own expense. Employee shall give the Company written notice of his/her employment with an employer providing health benefits within one (1) week of such employment.

    By executing and returning this Agreement, Employee authorizes the Company to deduct the Employee's cost of medical and dental coverage from the severance payments provided pursuant to paragraph "2(b)" above.

    d.     Life Insurance Coverage. An Employee's Basic Life Insurance coverage will continue in effect during the Severance Pay Period at the coverage level in effect as of the Employee's Termination Date. Life Insurance Severance Benefits coverage will terminate as of the last day of the Employee's Severance Pay Period.

e. Outplacement Assistance. The Company has engaged the services of Lee Hecht Harrison to provide Employee professional outplacement counseling.

3. Non-Solicitation.

a. Employee acknowledges and agrees that notwithstanding anything in this Agreement to the contrary, payment of any Severance Payment and eligibility for Severance Benefits pursuant to paragraph "2" above is expressly contingent upon Employee's compliance with this paragraph "3". Employee agrees that for the duration of the Severance Pay Period, the Employee will not, directly or indirectly induce or attempt to induce, or cause any person or other entity to induce or attempt to induce, any employee of the Company or any of its subsidiaries or affiliates to leave the employ of the Company or any of its subsidiaries or affiliates, or hire, attempt to hire or assist any person or other entity to hire or attempt to hire, any such employee of the Company or any of its subsidiaries or affiliates.

b. In the event that an Employee is in violation of any of the Employee's obligations under the non-solicitation agreement described in this paragraph "3(a)", Employee shall forfeit any and all rights to any Severance Payments and Severance Benefits under this Agreement. If the Company has not yet paid the Employee a Severance Payment or Severance Benefit or any portion of a Severance Payment or Severance Benefit as of the date the Company learns that the Employee violated any of his or her obligations under the non-solicitation agreement, the Company is not required to pay any further Severance Payments or Severance Benefits to the Employee under the Agreement. If the Company paid the Employee a Severance Payment or any portion of a Severance Payment before the date on which the Company learned that the Employee violated any of his or her obligations under the non-solicitation agreement, the Employee shall return to the Company, and the Company shall be entitled to recover, the full amount of that Severance Payment from the Employee.

4. Benefit Plans. In accordance with normal procedures applicable to employees who separate from service, Employee's participation in all Company benefit plans shall terminate as of the Employee's Termination Date, except as provided in paragraph "2" above and except to the extent that any such plan may provide for continuing participation at the Employee's expense.

Furthermore all benefits provided to Employee are determined in accordance with the provisions of the applicable plan document. In the event of a conflict, the plan document will govern. General Re Corporation and the Company reserves the right to amend and/or terminate its benefit plans from time to time and at any time at the Company's sole discretion.

5. No Consideration Absent Execution of this Agreement. Employee understands and agrees that he/she would not receive the monies and/or benefits specified in paragraph "2" above, except for his/her execution of this Agreement and General Release and the fulfillment of the promises contained herein.

6. Vacation. Employee will be paid a lump sum payment, less applicable taxes and deductions, for any accrued, but unused 2004 vacation days and for any unused 2003 vacation days carried over to 2004 (up to a maximum of five (5) vacation days) as of the Termination Date.

7. Re-employment of Employee. Employee understands and agrees that in the event of Employee's reemployment by the Company, the Severance Pay and Medical, Dental and/or Life Insurance coverage's provided pursuant to paragraphs "2" above shall cease as of the date of Employee's rehire.

8. Revocation. Employee may revoke this Agreement and General Release for a period of seven (7) days following the day he/she executes this Agreement and General Release. Any revocation within this period must be submitted, in writing, to Zoe Hopkins, Senior Vice President, and state, "I hereby revoke my acceptance of our Agreement and General Release." The revocation must be personally delivered to Zoe Hopkins or her designee, or mailed to Zoe Hopkins, General Reinsurance Corporation, 695 East Main Street, Stamford, CT 06901 and postmarked within seven (7) days of execution of this Agreement and General Release. This Agreement and General Release shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day which is not a Saturday, Sunday, or legal holiday.

9. General Release of Claim. Employee knowingly and voluntarily **releases and forever discharges the Company, its parent corporations, affiliates, subsidiaries, divisions, predecessor organizations, successors and assigns, and the current and former employees, officers, directors, attorneys and agents thereof (referred to collectively throughout this Agreement as the "Released Entities"), in their official and individual capacities of and from any and all claims, known and unknown,** against the Company, which Employee, his/her heirs, executors, administrators, successors, and assigns (referred to collectively throughout this Agreement as "Employee") have or may have **as of the date of execution of this Agreement and General Release,** including, but not limited to, any alleged violation of:

- The United States and/or State Constitutions;
- Title VII of the Civil Rights Act of 1964, as amended;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
- The Employee Retirement Income Security Act of 1974, as amended;
- The Fair Credit Reporting Act;
- The Immigration Reform Control Act, as amended;
- The Americans with Disabilities Act of 1990, as amended;
- The Age Discrimination in Employment Act of 1967, as amended;
- The Occupational Safety and Health Act, as amended;
- The Worker Adjustment and Retraining Notification Act;

- The Equal Pay Act;
- The Consolidated Omnibus Budget Reconciliation Act, as amended;
- The Family and Medical Leave Act of 1993;
- The Uniformed Services Employment and Reemployment Rights Act;
- Employee Polygraph Protection Act;
- The Connecticut Family and Medical Leave Act;
- The Connecticut Human Rights and Opportunities Act;
- The Connecticut Minimum Wage Law, as amended;
- The Connecticut Wage and Hour Laws, as amended;
- Equal Pay Law for Connecticut, as amended;
- Whistleblower Act for Connecticut;
- Connecticut Free Speech Act;
- any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance;
- any public policy, contract (express, written or implied), tort, or common law;
- any claims for vacation, sick or personal leave pay or payment pursuant to any practice, policy, handbook, or manual of the Company; or
- any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters.

10. No Claims Exist. Employee confirms that no claim, charge, complaint, or action exists in any forum or form. In the event that any such claim, charge, complaint or action is filed, Employee shall not be entitled to recover any relief or recovery therefrom, including costs and attorney's fees.

11. No Participation in Claims. Employee understands that if this Agreement were not signed, Employee would have the right to voluntarily assist other individuals or entities in bringing claims against the Company. Employee hereby waives that right and he/she will not provide any such assistance other than assistance in an investigation or proceeding conducted by an agency of the United States government.

12. Applicable Data. Attached as Exhibit "A" is a list of the job titles and ages of all individuals eligible for severance benefits offered by the Company. Attached, as Exhibit "B" is a list of the ages of all individuals in Employee's job classification or organizational unit who are ineligible for severance benefits.

13. Confidentiality

a. Employee agrees not to divulge at any time any information of a confidential or sensitive nature with which Employee has been entrusted or which has come into Employee's possession while an employee of the Company or any Released Entities, nor will Employee disparage the Company or any Released Entities, their employees, directors, or officers, or their business or reputation.

b. Unless required by valid subpoena or other legal process, Employee agrees not to disclose any information regarding the existence or substance of this Agreement and General Release, except to an attorney and/or accountant with whom Employee chooses to consult regarding his/her consideration of this Agreement and General Release, except to an immediate family member, or except to obtain compliance with the Agreement.

14. Employee's Cooperation. Employee agrees to cooperate with the Company in any litigation or arbitration involving matters in which Employee participated during his/her employment or about which Employee has acquired knowledge during his/her employment by the Company. The Company shall pay any expenses incurred by Employee at its request to such litigation or arbitration.

15. Repayment of Debt to Company. Employee agrees either to pay in full or to make arrangements with the Company for full payment within a reasonable time of any indebtedness of the Company incurred in connection with his/her employment, including any financial obligations incurred on Company credit cards, or otherwise paid for Employee on his/her behalf by the Company. If full payment of all such indebtedness is not received by the Employee's Termination Date, the Company will reduce the amount of benefits paid hereunder by an amount equal to the outstanding indebtedness.

16. No Future Application for Employment. Employee shall not apply for employment with General Re Corporation and/or its subsidiary corporations on or after the Termination Date.

17. Governing Law and Interpretation. This Agreement and General Release should be governed and conformed in accordance with the laws of the State of Connecticut without regard to its conflict of laws provision. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect. However, if any portion of the general release language were ruled to be unenforceable for any reason, Employee shall return the consideration paid hereunder to the Company.

18. Nonadmission of Wrongdoing. Employee agrees that neither this Agreement and General Release nor the furnishing of the consideration for this Release shall be deemed or construed at anytime for any purpose as an admission by the Company of any liability or unlawful conduct of any kind.

19. Amendment. This Agreement and General Release may not be modified, altered or changed except upon express written consent of both Parties wherein specific reference is made to this Agreement and General Release.

20. Entire Agreement. This Agreement and General Release sets forth the entire agreement between the Employee and the Released Entities hereto, and fully supersedes any prior agreements or understandings between the parties. Employee acknowledges that he/she has not relied on any representations, promises, or agreements of any kind made to him/her in connection with his/her decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release.

**EMPLOYEE HAS BEEN ADVISED IN WRITING THAT HE/SHE HAS UP TO FORTY-FIVE (45) DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE AND TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT AND GENERAL RELEASE.**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL FORTY-FIVE DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUMS AND BENEFITS SET FORTH IN PARAGRAPH "2" ABOVE, EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE/SHE HAS OR MIGHT HAVE AGAINST THE COMPANY, ITS PARENT CORPORATIONS, AFFILIATES, SUBSIDIARIES, DIVISIONS, PREDECESSOR ORGANIZATIONS, SUCCESSORS AND ASSIGNS, AND THE CURRENT AND FORMER EMPLOYEES, OFFICERS, DIRECTORS AND AGENTS THEREOF, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES.**

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement and General Release as of the date set forth below:

General Reinsurance Corporation

By: Zoe P. Hopkins
Zoe P. Hopkins
Senior Vice President - GRC

Dated: September 8, 2004

Bruce L. Wilson
Employee

Dated: 9-10-04

EXHIBIT #2

# LEE HECHT HARRISON

**One Landmark Square, 15th Floor, Stamford, CT 06901**

Ms. Zoe Hopkins
Vice President
General Reinsurance Corp.
695 East Main Street
Stamford, CT 06904

| | |
|---|---|
| Invoice | 195663 |
| Invoice Date | November 17, 2004 |
| Page | 1 of 1 |

For Professional Services

---

| | | | |
|---|---|---|---|
| Client Name: | Wilson, Bruce | $ | 12,500.00 |
| Type of Service: | Executive Service | | |
| Duration: | 12 Months | | |
| Service Location: | Hartford, CT | | |
| Start Date: | 11/15/04 | | |

**TOTAL AMOUNT DUE: $ 12,500.00**

**INVOICE DUE DATE: 11/27/04**

**Please MAIL your payment to:**
**Lee Hecht Harrison LLC**
**Dept CH #10544**
**Palatine, IL 60055-0544**

**or WIRE TRANSFER your payment to:**
**Bank: Mellon Bank**
**3 Mellon Center**
**Pittsburgh, PA 15259**
**ABA #: 043000261**
**Acct: Lee Hecht Harrison LLC**
**Acct #: 079-2503**

Lee Hecht Harrison LLC Federal Taxpayer ID #: 11-3575564

**For billing inquiries, call 203-964-9600**

PFO 3100HOS

EXHIBIT #3

Gen Re.

**Zoe P. Hopkins**
Senior Vice President and Assistant General Counsel

February 24, 2005

2.28.05

Bruce Wilson
Eminent Energy Promotions
351 Pleasant Street
Suite B PMB 352
Northhampton, MA 01060

Hi Zoe,
signed amendment enclosed.
pls let me know if there
are any other issues - thx
Bruce

Re: Outplacement

Dear Bruce:

This will confirm our telephone conversation earlier this week regarding your dissatisfaction with the outplacement services offered to you by Lee Hecht Harrison.

The Company has offered to pay you a lump sum payment of $12,500.00, less taxes and deductions, in return for a release of all claims relating to outplacement services.

The amount of $12,500.00 represents the value of the Lee Hecht Services, as confirmed by their invoice dated November 17, 2004, a copy of which is enclosed.

Enclosed are duplicate originals of a Release Agreement. Please sign and return one original in the enclosed return envelope. The second copy is for your files.

Please let me know if you have any questions.

Regards,

Zoe

Zoe P. Hopkins

Enclosure

**General Reinsurance Corporation**
Financial Centre, 695 East Main Street, Stamford, CT 06901
Tel. 203 328 5509, Fax 203 328 6071
zhopkins@genre.com, www.genre.com

*A Berkshire Hathaway Company*

EXHIBIT #3

AMENDMENT TO AGREEMENT AND GENERAL RELEASE

General Reinsurance Corporation, with offices at 695 East Main Street, Stamford, CT 06901, (referred to throughout this Amendment as the "Company"), and Bruce L. Wilson ("Employee") agree to amend the Agreement and General Release dated September 9, 2004 (the "Agreement") as follows:

1. Consideration. In consideration for signing this Amendment to Agreement and General Release (the "Amendment") and in lieu of the Outplacement Assistance provided to Employee under Paragraph 2e of the Agreement, the Company agrees to pay Employee a total of $12,500.00 representing the full value of such Outplacement Assistance to Employee. A copy of the Outplacement Assistance agreement with Lee Hecht Harrison is attached hereto. The payment is to be made less appropriate taxes* and deductions. [Note #1]

2. No Consideration Absent Execution of this Amendment. Employee understands and agrees that he would not receive* the monies specified in Paragraph "1" above, except for his execution of this Amendment and the fulfillment of the promises contained herein. [Note #2]

3. General Release of Claim. Employee knowingly and voluntarily **releases and forever discharges the Company and Lee Hecht Harrison ("Lee Hecht"), their parent corporations, affiliates, subsidiaries, divisions, predecessor organization, successors and assigns, and their current and former employees, officers, directors, attorneys and agents thereof (referred to collectively throughout this Amendment as the "Released Entities"), in their official and individual capacities of and from any and all claims, known and unknown,** against the Company and Lee Hecht, which Employee, his heirs, executors, administrators, successors, and assigns (referred to collectively throughout this Amendment as "Employee") have or may have **as of the date of execution of this Amendment**, including, but not limited to any and all claims relating to Outplacement Assistance provided to Employee from September 9, 2004 up to the date of execution of this Amendment, any public policy, contract (express, written or implied), tort or common law, any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters.

4. Entire Agreement. Except as provided in this Amendment, the Agreement sets forth the entire agreement between the Employee and the Released Entities hereto, and fully supersedes any prior agreements or understandings between the parties. Employee acknowledges that he has not relied upon any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Amendment, except for those set forth in this Amendment.

**EMPLOYEE UNDERSTANDS AND AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE MADE TO THE AGREEMENT AND GENERAL RELEASE DO NOT AFFECT IN ANY MANNER THE PARTIES OBLIGATIONS UNDER ORIGINAL AGREEMENT AND GENERAL RELEASE, EXCEPT AS EXPRESSLY PROVIDED INTHIS AMENDMENT.**

EXHIBIT #3

HAVING ELECTED TO EXECUTE THIS AMENDMENT TO AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUM SET FORTH IN PARAGRAPH "1" ABOVE, EMPLOYEE FREELY KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AMENDMENT TO AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST THE COMPANY AND LEE HECHT, THEIR PARENT CORPORATIONS, AFFILIATES, SUBSIDIARIES, DIVISONS, PREDECESSOR ORGANIZATIONS, SUCCESSORS AND ASSIGNS, AND THEIR CURRENT AND FORMER EMPLOYEES, OFFICERS, DIRECTORS AND AGENTS THEREOF, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES RELATING TO OUTPLACEMENT ASSISTANCE PROVIDED TO EMPLOYEE.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Amendment to Agreement and General Release as of the date set forth below:

General Reinsurance Corporation

By: Zoe P. Hopkins
Zoe Hopkins
Senior Vice President - GRC

Dated: February 24, 2005

Bruce Wilson * [note #3]

Bruce Wilson
Bruce Wilson

Dated: 2.28.05

- Note #1: pls leave me as much discretion as legally possible to manage my taxes, i.e. pls withhold as low a % as possible for the fewest # of agencies as possible.

  The value of the outplacement contract was not subject to any court orders applying to, or involving, gen re at its inception, or at any time thereafter, and should not, therefore, be subject to any such orders now

- note #2: pls issue paper check, overnight to current address you have on file. I will be happy to pay for the costs of mailing.
- Note #3: thank you, Zoe.

EXHIBIT #4

site index | contact us

RRISON | *Global Career Management Services*

search

About LHH | Solutions & Services | News | Events | Knowledge Center

January 28, 2005

# Executive Team

Our executive team are leaders and visionaries who are all well respected experts in career management. Read more about their experience.

| | |
|---|---|
| **Paul R. O'Donnell** | President and Chief Operating Officer |
| **Peter Alcide** | Executive Vice President, Chief Financial and Corporate Development Officer |
| **Barbara T. Barra** | Executive Vice President, Northeast Region |
| **Julie Beck** | Executive Vice President, Central Region |
| **Edouard Comment** | Executive Vice President, European Operations |
| **Robert J. Freiburger** | Executive Vice President, Southern Region |
| **Andrea Huff** | Executive Vice President, Leadership Consulting |
| **Rick Junius** | Executive Vice President, Western Region |
| **Bernadette Kenny** | Executive Vice President, Chief Global Sales and Marketing Officer |
| **John M. Mears** | Executive Vice President, Field Support Services |

**LHH Office Locator**

Select a Country

**Related Links**

- LHH News
- Who We Serve
- Our Career Transition Process (AIM)
- Our Leadership Consulting Methodology

**Contact Us**

- Get more information about LHH services
- Find your local LHH office

Are
reer
ion
s (AIM)
ship
ting
lology
ty
inity
Serve
c
s &
s
nent at
s
s

arbara T. Barra | Executive Team Bio | Global Career Services | Lee Hecht Harrison Page 1 of 2

site index | contact us

.EE HECHT HARRISON | Global Career Management Services

search

Home | About LHH | Solutions & Services | News | Events | Knowledge Center

January 28, 2005

Executive Team

LHH Office Locator

Select a Country

About LHH
- Who We Are
  - Our Career Transition Process (AIM) ®
  - Our Leadership Consulting Methodology
  - Quality
  - Diversity
  - Community Service
- Who We Serve
- Strategic Partners & Alliances
- Employment at LHH
- Related Business Divisions

# Barbara T. Barra

## Executive Vice President, Northeast Region

***"We must routinely assess and improve our services in light of emerging marketplace trends and the changing needs and expectations of the clients we serve."***

As Executive Vice President for Lee Hecht Harrison's Northeast Region, Barbara oversees the P&L performance and service delivery of 20 offices in the practice areas of Career Transition, Career Development, and Leadership Consulting.

Barbara brings to this role a wealth of personal experience consulting with client companies on a wide range of strategic organizational initiatives including restructuring, mergers/acquisitions/divestitures, reengineering and culture change. Her background also includes working with individual clients as an executive coach, leadership team facilitator and career transition consultant.

After joining Lee Hecht Harrison in 1987 as a Senior Career Consultant in New York , Barbara was appointed General Manager of one of the firm's New Jersey offices, followed by Managing Director of the company's flagship New York City office. Her earlier career encompassed over 15 years in the pharmaceutical, chemical and retail industries in senior human resources roles.

Barbara has extensive public speaking experience and has been interviewed for print, television and radio regarding issues related to career management. She holds a Master's degree in Human Resources from Cornell University. In addition, she is a

**Contact Us**
- Get more information about LHH services
- Find your local LHH office

tp://www.lhh.com/about/who/bios/barra.cfm 1/28/2005

**EXHIBIT #5**

--- Barbara Barra <barbara_barra@lhh.com> wrote:

> Hello, Bruce.
>
> Your January 28th email correspondence to
Info@LHH.com which
> you submitted in response to my voice mail messages
has been forwarded to
> me. Actually, I would have preferred to speak to
you directly,
> but in the interest of resolving this issue
quickly, I am writing to you.
>
> Based upon your dissatisfaction with LHH's
services, your
> stated needs and expectations, and a complete
review of the file maintained by
> LHH documenting the services provided to you, we
have determined
> that your service at LHH should be discontinued and
that the unused
> portion of the fee will be credited to your former
employer, General
> Reinsurance.

EXHIBIT #5

This is the case despite our best efforts to provide you with
> professional career transition services. This decision has already been
> communicated to General Reinsurace, so you should contact them directly
> regarding whether they will provide you with services through another
> vendor. Rest assured that we did not provide any details regarding the
> services LHH provided for you but merely advised them of your
> dissatisfaction and our belief that continuation of services would not be productive
> for you or LHH.

> Finally, I note that in your correspondence earlier today, you
> questioned whether I or LHH had recorded telephone conversations with
> you. This did not occur. It is not LHH's policy or practice to record
> telephone conversations.
>
> Our very best wishes for success with your entrepreneurial
> venture.
>
> Barbara
>
>
>
> -----------------------
> Barbara Barra
> Executive Vice President - Northeast Region
> Lee Hecht Harrison
> 50 Tice Boulevard
> Woodcliff Lake, NJ 07677
> Direct dial:(908) 766-0150
> Fax: 973-755-9178
> e-mail: Barbara_Barra@lhh.com

YAHOO! MAIL

Print - Close Window

**Date:** Sat, 5 Mar 2005 09:47:23 -0800 (PST)

**From:** "bruce wilson" <eminentenergy@yahoo.com>

**Subject:** Re: lee hecht payment deductions

**To:** zhopkins@genre.com

**CC:** "joe brandon" <jbrandon@genre.com>

[illegible], this is unfortunate

i have not cashed the check yet, and that keeps the agreement unconcluded and not binding

the value of the lhh services were mine 100% prior to the cancellation and not subject to garnishment of any kind

in the conversion process, from lhh to gen re to me, gen re has compromised my private contractual ownership rights in this asset by the amount of the garnishment

this needs to be undone, zoe, and the full value of the lhh services paid to me

gen re has to deem the value to me as something else, it is not cash compensation - that is an error by gen re - some other category that is alike to what it was previously as if the services were not deemed cash compensation

gen re can cancel the other check or electronic deposit on the garnishment and if need be, take the 3500 hit for the error

pls do this voluntarily

or tell me why my contractual right was not damaged by gen re, and thereby the interests and welfare of my children

bruce

--- zhopkins@genre.com wrote:

**Exhibit #6**

> Hi Bruce -
>
> Payroll has provided the following information:
>
> $12,[illegible] Gross
> ([illegible].00) Federal Withholding
> ([illegible].00) Social Security
> ([illegible]1.25) Medicare
> ([illegible].33) State
> (3583.00) Garnishment
> $ [illegible],[illegible].42 Net
>
> Unfortunately, any cash payment is considered as compensation for purposes
> of a court support order or wage garnishment. We have no flexibility and
> are required to comply.
>
> I hope this answers your question.
>
> Regards,
> Zoe
>
>
>
>
>
> bruce wilson

zhopkins@genre.com

jbrandon@genre.com

Subject: lee hecht payment

> hi [illegible], the [illegible] haircut on the gross proceeds seems heavy, given min tax [illegible]
>
> what are the other deductions?
>
> did payroll inadvertently deem this "cash compensation" as subject to court support
> orders, when it is not and had not been prior thereto? (check arrived without
> supporting deduction documentation - which i need for my personal and biz tax
> preparation)
>
> prior to the conversion, i believe i had 100 of the proceeds, or not?
>
> pls educate me
>
> bruce
>
> bruce wilson . president
> eminent energy promotions
> 351 pleasant street
> suite b . pmb 352
> northampton . ma . 01060
> 413 . [illegible] . 6857 mobile
> eminentenergy@yahoo.com

> Celebrate Yahoo!'s 10th Birthday!
> Yahoo! Netrospective: 100 Moments of the Web
> http://birthday.yahoo.com/netrospective/

> This e-mail, including attachments, is intended for the person or company
> named and may contain confidential and/or legally privileged information.
> Unauthorized disclosure, copying or use of this information may be
> unlawful and is prohibited. If you are not the intended recipient, please
> delete this message and notify the sender.

EXHIBIT #7

Rec. Thurs 3.3.05

- s/w Jill Duke - need accompanying deduction worksheet
  - for my taxes
  - to confirm payroll ded not subject to court support orders
- vmail Zoe Hopkins - same

GENERAL REINSURANCE CORPORATION

PERIOD ENDING 2/25/05

NAME Bruce Wilson

| TOTAL EARNINGS | 1350 | 00 |
| --- | --- | --- |
| F.I.C.A. | | |
| WITHHOLDING U.S. INCOME TAX | | |
| STATE INCOME TAX | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL DEDUCTIONS | | |
| NET PAY | 6302 | 42 |

EMPLOYEE'S STATEMENT OF EARNINGS

GENERAL REINSURANCE CORPORATION

PERIOD ENDING 2/25/05

NAME Bruce Wilson

| TOTAL EARNINGS | 1350 | 00 |
| --- | --- | --- |
| F.I.C.A. | | |
| WITHHOLDING U.S. INCOME TAX | | |
| STATE INCOME TAX | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL DEDUCTIONS | | |
| NET PAY | 6302 | 42 |

EMPLOYEE'S STATEMENT OF EARNINGS

WILSON 3/2/04

**GENERAL REINSURANCE CORPORATION**
FINANCIAL CENTRE
P.O. BOX 10350
STAMFORD, CT 06904-2350

3598

1-2/210 300

DATE MAR 02 2005

PAY TO THE ORDER OF BRUCE WILSON

$ ****6302.42

GENERAL RE GROUP
FINANCIAL CENTER

DOLLARS

JPMorgan
JPMorgan Chase Bank
270 Park Avenue
New York, NY 10017

FOR

⑈003598⑈ ⑆021000021⑆610092995⑈

VOID OVER

YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **Date:** | Sat, 5 Mar 2005 09:47:23 -0800 (PST) |
| **From:** | "bruce wilson" <eminentenergy@yahoo.com> |
| **Subject:** | Re: lee hecht payment deductions |
| **To:** | zhopkins@genre.com |
| **CC:** | "joe brandon" <jbrandon@genre.com> |

**EXHIBIT #8**

z[illegible], this is unfortunate

i have not cashed the check yet, and that keeps the agreement unconcluded and not binding

the value of the lhh services were min- [illegible] prior to the cancellation and not subject to garnishment of any kind

in the conversion process, from lhh to gen re to me, gen re has compromised my private contractual ownership rights in this asset by the amount of the [illegible] garnishment

this needs to be undone, now, and the full value of the lhh services paid to me

gen re has to deem the value to me as something else, it is not cash compensation - that is an error by gen re - some other category that is alike to what it was previously as if the services were not deemed cash compensation

gen re can cancel the other check or electronic deposit on the garnishment and if need be, take the [illegible] hit for the error

pls do this voluntarily

or tell me why my contractual right was not damaged by gen re, and thereby the interests and welfare of my children

bruce

--- zhopkins@genre.com wrote:

> Hi Bruce -
>
> Payroll has provided the following information:
>
> $1[illegible],500.00 Gross
> ([illegible].00) Federal Withholding
> (7[illegible].00) Social Security
> (181.25) Medicare
> (256.33) State
> (3563.00) Garnishment
> $ 6,[illegible].42 Net
>
> Unfortunately, any cash payment is considered as compensation for purposes
> of a court support order or wage garnishment. We have no flexibility and
> are required to comply.
>
> I hope this answers your question.
>
> Regards,
> Zoe

bruce wilson

EXHIBIT #8

YAHOO! MAIL

Print - Close Window

**Date:** Sat, 5 Mar 2005 11:03:50 -0800 (PST)

**From:** "bruce wilson" <eminentenergy@yahoo.com>

**Subject:** Re: lee hecht payment deductions

**To:** zhopkins@genre.com

**CC:** "joe brandon" <jbrandon@genre.com>, rmanz@genre.com, ncanelos@genre.com

another thought or two, zoe, if i may, as i have to, because i am becoming quite concerned over gen re's handling of this matter the more it resonates with me...

and i don't want to be at odds with gen re, i have done what i can to remain aligned with gen re - i have communicated this in writing and verbally a dozen times to you and other former colleagues

however, gen re unilaterally subjected my 100% contractual property value of the lee hecht services contract to a 28% "garnishment" in the internal administrative process of converting this to a paper check

had lee hecht not canceled this contract, this would not have occurred

or for that matter, why did gen re not take the 28% haircut of the lee hecht contract at the time the severance agreement was executed? why now?

zoe, this is a new term for me, not one gen re has used previously - what is the basis of the "garnishment"? i know of no "garnishment" orders in effect

is there a "garnishment" order in effect? was this an error?

gen re will need to disclose and identify to me the nature of the "garnishment" sooner or later

there are support orders applying to gen re of which i am aware, but no garnishment orders - were these terms confused by gen re? is there a new garnishment order that came into effect after the execution of the severance agreement and in effect at the time lee hecht terminated their services contract?

[btw - zoe, we need to talk about the behavior of my attorneys, esp. during the summer and fall of 2004, at some point - i have reason to believe they initiated secret conversations with gen re prior to the severance period, without my knowledge or approval - i do not know with whom, but they let this slip at one point in january 2005.....i have been intending to follow up on it with hard evidence, because it is a nettlesome issue, which i would obtain with court-ordered land.line and mobile telecommunications carriers for all parties to match call times and dates]

in any event, gen re's misclassification error of the lhh asset, as "cash compensation" left me with less than 100% before the process started, or ??

that puts my interests at odds with the interests of gen re, at least until someone educates me as to why the seeming arbitrary 28% haircut does not injure my contractual property rights

so what do i do?
++++++++++++,+++

first, i re-read the severance agreement. i find no clause granting gen re unilateral freedom to reclassify various assets covered by it for my benefit, or that i contractually own

i find no language granting gen re the freedom to unilaterally compromise my contractual property rights to any of these assets

on the contrary, i believed gen re would take no action that would damage my

contractual property rights, and take every action to promote and safeguard those interests

second, i check to determine that i have been in compliance with the terms of the agreement. i believe i have. if my understanding is not correct, you must advise me

third, i reaffirm my intentions to shred any party behaving in a manner adverse to my interests, and where aligned, the interests of my children

fourth, does the matter at hand have characteristics resembling those of the portfolio referenced in the previous step

fifth, i communicate freely with those i consider allies, and i enlarge the circle of communication, inviting a larger body of allied knowledge to consider the matter, with hopeful acceptance by way of suggestions and immediate action to resolve, or facilitate the resolution of, the matter

sixth, get a higher education on the matter. asking "why" repeatedly usually accomplishes much

seventh, propose alternative solutions...this i did in my earlier email, on the specific matter of the lee hecht contract: reverse what was done and make it right

and again here: zoe, why don't we handle all the remaining assets in the agreement as gen re did the lee hecht contract, terminate it immediately, take the haircut, carve out the lump sums, split it all up, and save gen re the administrative costs and future persnickety emails from me

from what i read in the wsj, gen re has higher valued matters with which it must now deploy resources

my phone is always on

bruce
****************************************************************************

--- zhopkins@genre.com wrote:
>
> Hi Bruce -
>
> Payroll has provided the following information:
>
> $12,500.00 Gross
> (700.00) Federal Withholding
> (775.00) Social Security
> (181.25) Medicare
> (958.33) State
> (3583.00) Garnishment
> $ 6,302.42 Net
>
> Unfortunately, any cash payment is considered as compensation for purposes
> of a court support order or wage garnishment. We have no flexibility and
> are required to comply.
>
> I hope this answers your question.
>
> Regards,
> Zoe
>
>
>
>
>
> bruce wilson
>
> prominentenergy@ya To: zoe hopkins
> <zhopkins@genre.com>

EXHIBIT #9

AMENDMENT TO AGREEMENT AND GENERAL RELEASE

General Reinsurance Corporation, with offices at 695 East Main Street, Stamford, CT 06901, (referred to throughout this Amendment as the "Company"), and Bruce L. Wilson ("Employee") agree to amend the Agreement and General Release dated September 9, 2004 (the "Agreement") as follows:

1. Consideration. In consideration for signing this Amendment to Agreement and General Release (the "Amendment") and in lieu of the Outplacement Assistance provided to Employee under Paragraph 2e of the Agreement, the Company agrees to pay Employee a total of $12,500.00 representing the full value of such Outplacement Assistance to Employee. A copy of the Outplacement Assistance agreement with Lee Hecht Harrison is attached hereto. The payment is to be made less appropriate taxes and deductions.

2. No Consideration Absent Execution of this Amendment. Employee understands and agrees that he would not receive the monies specified in Paragraph "1" above, except for his execution of this Amendment and the fulfillment of the promises contained herein.

3. General Release of Claim. Employee knowingly and voluntarily **releases and forever discharges the Company and Lee Hecht Harrison ("Lee Hecht"), their parent corporations, affiliates, subsidiaries, divisions, predecessor organization, successors and assigns, and their current and former employees, officers, directors, attorneys and agents thereof (referred to collectively throughout this Amendment as the "Released Entities"), in their official and individual capacities of and from any and all claims, known and unknown**, against the Company and Lee Hecht, which Employee, his heirs, executors, administrators, successors, and assigns (referred to collectively throughout this Amendment as "Employee") have or may have **as of the date of execution of this Amendment**, including, but not limited to any and all claims relating to Outplacement Assistance provided to Employee from September 9, 2004 up to the date of execution of this Amendment, any public policy, contract (express, written or implied), tort or common law, any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters.

4. Entire Agreement. Except as provided in this Amendment, the Agreement sets forth the entire agreement between the Employee and the Released Entities hereto, and fully supersedes any prior agreements or understandings between the parties. Employee acknowledges that he has not relied upon any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Amendment, except for those set forth in this Amendment.

**EMPLOYEE UNDERSTANDS AND AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE MADE TO THE AGREEMENT AND GENERAL RELEASE DO NOT AFFECT IN ANY MANNER THE PARTIES OBLIGATIONS UNDER ORIGINAL AGREEMENT AND GENERAL RELEASE, EXCEPT AS EXPRESSLY PROVIDED INTHIS AMENDMENT.**

**HAVING ELECTED TO EXECUTE THIS AMENDMENT TO AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SUM SET FORTH IN PARAGRAPH "1" ABOVE, EMPLOYEE FREELY KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AMENDMENT TO AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST THE COMPANY AND LEE HECHT, THEIR PARENT CORPORATIONS, AFFILIATES, SUBSIDIARIES, DIVISONS, PREDECESSOR ORGANIZATIONS, SUCCESSORS AND ASSIGNS, AND THEIR CURRENT AND FORMER EMPLOYEES, OFFICERS, DIRECTORS AND AGENTS THEREOF, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES RELATING TO OUTPLACEMENT ASSISTANCE PROVIDED TO EMPLOYEE.**

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Amendment to Agreement and General Release as of the date set forth below:

General Reinsurance Corporation

By: Zoe P. Hopkins
Zoe Hopkins
Senior Vice President - GRC

Dated: February 24, 2005

Bruce Wilson

____________________
Bruce Wilson

Dated: ________________

JS 44 (Rev 3/99) ATTACHMENT 2

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Bruce L. Wilson #1
eminent energy Promotions #2

**DEFENDANTS**
Barbara Barra
Paul O'Donnell
Lee Hecht Harrison

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)
Hampshire County, Massachuetts

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.
Bergen County, New Jersey

(c) Attorney's (Firm Name, Address, and Telephone Number)
Pro se

Attorneys (If Known)
not Known

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Title 42. chapter 21 - U.S.C. § 1983

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 105,000 (onehundredFive thousand)
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE motion For Summary Judgment DOCKET NUMBER
None

DATE 3.4.05
SIGNATURE OF ATTORNEY OF RECORD Bruce L. Wilson, pro se

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

306551

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ATTACHMENT 3

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Wilson v. Bana

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET (SEE LOCAL RULE 40.1(A)(1))

___ I. 160, 410, 470, R 23, REGARDLESS OF NATURE OF SUIT.

X II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

___ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

___ V. 150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

None

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

YES ☐ NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

YES ☐ NO ☒

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

YES ☐ NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

YES ☐ NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

YES ☐ NO ☒

A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

EASTERN DIVISION ☐ CENTRAL DIVISION ☐ WESTERN DIVISION ☐

B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

EASTERN DIVISION ☐ CENTRAL DIVISION ☐ WESTERN DIVISION ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Bruce L. Wilson prose

ADDRESS 351 Pleasant Street. Suite B. PMB 352, Northampton MA 01060

TELEPHONE NO. 413.262.8857

(Att3Cover sheet local.wpd - 11/27/00)