# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

FILED

U.S. DISTRICT COURT

---

BRUCE WILSON AND EMINENT
ENERGY PROMOTIONS,

                    PLAINTIFFS


V.                                          C.A. # 05 – 30067 - MAP


BARBARA BARRA, PAUL O'DONNELL
AND LEE HECHT HARRISON,

                    DEFENDANTS

---

PLAINTIFFS SUBMIT THE FOLLOWING MEMORANDA OF LAW AND FACTS IN

SUPPORT OF THEIR MOTIONS TO DISMISS THE MOTION OF THE DEFENDANTS TO

DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12 [B] [6] IN ITS

ENTIRETY, AND IN SUPPORT OF THEIR MOTION TO MOVE FOR REQUEST FOR ORAL

ARGUMENT.

**PLAINTIFFS' MEMORANDUM OF LAW AND FACTS IN SUPPORT OF THEIR MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 56[C] THE MOTION OF THE DEFENDANTS TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12[B][6]**

1] PLAINTIFFS MOVE PURSUANT TO FED. R. CIV. P. 56[C] FOR DISMISSAL OF DEFENDANTS' MOTION BECAUSE THERE EXIST GENUINE ISSUES AS TO MATERIAL FACTS. THE FIRST "FACT" IS ONE STATED IN PARAGRAPH 15 OF THEIR MOTION, WHICH IS THAT THE SETTLEMENT AMOUNT WAS SUBJECT TO AN EXISTING COURT GARNISHMENT ORDER. THIS STATEMENT IS FALSE, UNTIL EVIDENCED OTHERWISE, BECAUSE THE ORIGINAL SETTLEMENT AMOUNT, REPRESENTING THE UNUSED PORTION OF THE INTELLECTUAL CAPITAL EMBODIED IN THE CONTRACT FOR THE JANUARY 28, 2005 TO OCTOBER 31, 2005 PERIOD, HAD NO CONTRACTUAL BASIS, OR EVEN POSSIBILITY, TO BE DELIVERED TO PLAINTIFFS, OR ADMINISTERED OR ACCOUNTED FOR, OR SUBJECTED TO COURT ORDERS, DIFFERENTLY THAN AND CONTRARY TO, THE USED PORTION OF INTELLECTUAL CAPITAL DELIVERED TO PLAINTIFFS FOR THE NOVEMBER 1, 2004 TO JANUARY 28, 2005 PERIOD.

2] IN OTHER WORDS, THE UNUSED STORE OF VALUE, *INTELLECTUAL CAPITAL,* IN

THE PROFESSIONAL SERVICES CONTRACT WAS *PUSHED* INTO THE COURT ORDER

AFTER HAVING BEEN TRANSFIGURED BY DEFENDANTS, INDIVIDUALLY AND

COOPERATIVELY, THROUGH AN ERRONEOUS ACCOUNTING PROCESS AND

CLASSIFICATION, OR OTHER ERROR OR OMISSION, OR NOT, INTO A DIFFERENT

STORE OF VALUE AS CASH CAPITAL, RATHER THAN *PULLED* INTO IT.  THIS COURT

ORDER, WHATEVER ITS IDENTITY AND PARAMETERS MAY BE, IS NO EARTHLY

BLACK HOLE SUCKING IN THE INTELLECTUAL CAPITAL OF PLAINTIFFS'

PROFESSIONAL SERVICES CONTRACT WITH WHICH PLAINTIFFS HAVE

FAMILIARITY. DEFENDANTS AND GENRE CERTAINLY *PUSHED*, DELIBERATELY

HARD, TO GENERATE SUCH SEISMIC INTEREST.

3] DEFENDANTS AND GENRE DID NOT SUBJECT THE PROFESSIONAL SERVICES

CONTRACT TO ANY COURT ORDERS DURING ITS USED PERIOD. PLAINTIFFS NEVER

RECEIVED SUPPORTING ACCOUNTING DOCUMENTATION EVIDENCING COURT

GARNISHMENT DEDUCTIONS FROM THE CONTRACT'S FINANCIAL OR ECONOMIC

VALUE DURING ITS USED PERIOD, 20% AS PER PARAGRAPH 23 OF THE

COMPLAINT, AND DEFENDANTS' NOVEMBER 17, 2004 INVOICE CONTAINS NO

DEDUCTION MARKINGS INDICATING APPLICATION OF COURT ORDERS. IN FACT,

HAD THE CONTRACT NOT BEEN TERMINATED BUT THE REMAINING 80%

INTELLECTUAL CAPITAL UNEVENTFULLY DELIVERED THROUGH THE END OF ITS

NATURAL ANNUAL EXPIRATION DATE, THERE WOULD HAVE BEEN NO

GARNISHMENT OF THE CONTRACT'S VALUE BY COURT ORDER.

4] DEFENDANTS WERE PROVIDING INTELLECTUAL CAPITAL TO PLAINTIFFS UNDER

THE PROFESSIONAL SERVICES CONTRACT, OR ALTERNATIVE NONTRADITIONAL

ARRANGEMENT. DEFENDANTS WERE NOT PROVIDING AND DELIVERING CASH

CAPITAL TO PLAINTIFF UNDER THE PROFESSIONAL SERVICES CONTRACT.

INTELLECTUAL CAPITAL CANNOT BE GARNISHED BY COURT ORDERS AND

REDIRECTED ELSEWHERE AS CAN CASH CAPITAL. INTELLECTUAL CAPITAL HAS

PROPERTIES AND CHARACTERISTICS THAT DIFFER MARKEDLY FROM CASH

CAPITAL. DEFENDANTS AND GENRE CONVERTED THE STORE OF VALUE RESIDENT

IN THE UNUSED FUTURE DELIVERIES OF INTELLECTUAL CAPITAL, INTO PRESENT

DAY CASH CAPITAL. PLAINTIFFS' INTERESTS WERE NOT ADVERSELY AFFECTED

UNDER THE DELIVERY OF INTELLECTUAL CAPITAL. UPON ARBITRARY

TRANSFIGURATION TO CASH CAPITAL, PLAINTIFFS INTERESTS WERE ADVERSELY

AFFECTED.

5] PLAINTIFFS ARE AWARE OF NO EXISTING COURT ORDERS AT ANY TIME THAT

APPLIED TO THE INTELLECTUAL CAPITAL OF THE PROFESSIONAL SERVICES

CONTRACT. DEFENDANTS FAILED TO PROVIDE A COPY OF THE PROFESSIONAL

SERVICES CONTRACT IN THEIR MOTION, WHOSE TERMS AND CONDITIONS OF THE

CONTRACT, PARTICULARLY ITS CANCELLATION PROVISIONS, ARE ONE OF

SEVERAL DOCUMENTS AT THE HEART OF THIS ARGUMENT. PLAINTIFFS HAVE

REQUESTED A COPY OF THE PROFESSIONAL SERVICES CONTRACT ON SEVERAL

OCCASIONS, ALL TO BE DENIED AND IGNORED BY DEFENDANTS. DEFENDANTS

SHOULD HAVE PRODUCED THIS WITH THEIR MOTION. DOING SO WOULD NOT

HAVE INJURED THEIR INTERESTS.

6] ON THE OTHER HAND, IF NO PROFESSIONAL SERVICES CONTRACT EXISTS BETWEEN GENRE AND DEFENDANTS, THEN WHAT RULES, CUSTOMS AND PRACTICES GOVERN THE RELATIONSHIP? AND WHAT LAW AND VENUE ARE THE MOST APPROPRIATE TO RESOLVE ARGUMENTS ARISING FROM THE RELATIONSHIP? AND WHAT MAY BE THE POSSIBLE AND PROBABLE IMPLICATIONS FOR PLAINTIFFS' ACTION AND INTERESTS, WHEN PLAINTIFFS, LED TO BELIEVE A TRADITIONAL CONTRACTUAL RELATIONSHIP EXISTS BETWEEN DEFENDANTS AND GENRE, DESIGN AND IMPLEMENT LEGAL STRATEGY UPON THAT CONVEYED EXPECTATION? PLAINTIFFS WOULD BE ROUNDLY WHIPPED IN THE PUBLIC SQUARE WITH JAGGED CHAINS FOR BLINDLY AGREEING TO PROCEED WITHOUT SUCH BASIC AND FUNDAMENTAL DOCUMENTATION.

7] DEFENDANTS AND GENRE WRONGLY AND INTENTIONALLY TRANSFIGURED THE ECONOMIC STORE OF VALUE OF THE PROFESSIONAL SERVICES CONTRACT FROM ITS ORIGINAL STORE OF VALUE AS INTELLECTUAL CAPITAL TO A DIFFERENT STORE OF VALUE AS CASH CAPITAL [I.E. CASH COMPENSATION SETTLEMENT]. THE FORMER IS NOT SUBJECT TO, AND WAS NEVER SUBJECT TO, COURT ORDERS OR GARNISHMENT.

8] DEFENDANTS ON JANUARY 28, 2005 INDICATED THEIR INTENTION TO CREDIT

THE UNUSED PORTION OF THE FEE TO PLAINTIFFS' FORMER EMPLOYER, GENRE

AS PER EXHIBIT #5 OF THE COMPLAINT. DEFENDANTS HAVE NOT EVIDENCED

THAT THEY POSSESSED THE RIGHT OR OBLIGATION, AT THE IMPLEMENTATION

PHASE OF THEIR CONTRACT TERMINATION DECISION, TO CREDIT THE UNUSED

PORTION TO GENRE BECAUSE PLAINTIFFS OWN THE USED AND UNUSED

PORTIONS OF THE CONTRACTUAL ASSET. WHERE DO DEFENDANTS FIND THEIR

RIGHT TO CONVEY AN ASSET THEY DO NOT OWN TO ANOTHER PARTY WITHOUT

THE OWNER'S [I.E. PLAINTIFFS] CONSENT? DEFENDANTS HAD PLAINLY VISIBLE

FREEDOM TO MORE RIGHTLY CREDIT THE UNUSED PORTION OF THE CONTRACT'S

INTELLECTUAL CAPITAL DIRECTLY TO PLAINTIFFS [AS PER PARAGRAPH #8 OF

DEFENDANTS' MOTION, "LHH *AGREED* TO PAY GENRE THE UNUSED PORTION OF

THE $12,500", INDICATING THERE MAY HAVE BEEN NEGOTIATION BETWEEN

DEFENDANTS AND GENRE PRIOR TO DEFENDANTS' "*AGREEMENT*" TO DO SO].

9] PLAINTIFFS COMMUNICATED TO DEFENDANTS ON FEBRUARY 14, 2005 THEIR STRENUOUS OBJECTIONS TO DEFENDANTS' INTENTION, PROVIDING SUPPORTING EXPLANATION OF THE TRANSFIGURATION OF THE ECONOMIC STORES OF CAPITAL VALUE AND ABROGATION OF PLAINTIFFS' CONTRACTUAL RIGHTS TO THE PROFESSIONAL SERVICES CONTRACT. DEFENDANTS WILLFULLY AND ARROGANTLY BRUSHED ASIDE PLAINTIFFS CONCERNS DIRECTLY CAUSING HARM TO PLAINTIFFS THROUGH THE SHUT DOWN OF NEW EMPLOYMENT AND INCOME-GENERATING ACTIVITIES AND FOR WHICH REMEDY & RELIEF HAS BEEN DEMANDED[EXHIBIT #1].

10] ANOTHER "FACT" STATED IN PARAGRAPH 14 OF THEIR MOTION IS NOT A FACT. PLAINTIFFS DID NOT EXECUTE THE GENERAL RELEASE. EXECUTING THE GENERAL RELEASE INVOLVES MORE FORMALITIES THAN MERELY SIGNING THE DOCUMENT. ACCORDING TO THE CUSTOM AND PRACTICE OF MY FORMER EMPLOYER, GENRE, AND AS PER CASE LAW, THESE FORMALITIES INCLUDE AT LEAST THREE ELEMENTS: A MEETING OF THE MINDS, NEGOTIATING IN GOOD FAITH AND NEGOTIATED ACCEPTANCE OF CONSIDERATION. TAKEN TOGETHER, WHEN ALL ELEMENTS ARE ACCOMPLISHED, THE TRANSACTION CAN BE SAID TO BE CONSUMMATED. OF THE THREE ELEMENTS, THE MOST IMPORTANT ACCORDING TO THE HISTORY AND CULTURE OF GENRE IS A MEETING OF THE MINDS. PLAINTIFF VALUES THIS ELEMENT MOST HIGHLY AS WELL.

11]ONLY ONE OF THREE ELEMENTS WAS ACCOMPLISHED: PLAINTIFFS SIGNED THE RELEASE, BUT DID NOT NEGOTIATE ACCEPTANCE OF CONSIDERATION AND THERE WAS NO MEETING OF THE MINDS. PLAINTIFF'S ALSO ALLEGE BAD FAITH IN THE NEGOTIATION PROCESS BECAUSE PLAINTIFFS RECEIVED THE SETTLEMENT CHECK WITHOUT SUPPORTING EVIDENTIARY ACCOUNTING INFORMATION THAT GENRE CUSTOMARILY INCLUDES WITH ALL PAYMENTS PLAINTIFFS HAS RECEIVED FROM GENRE IN THE 21 YEARS OF EMPLOYMENT. THIS OMISSION WAS MORE THAN AN ODD HAPPENSTANCE BECAUSE DEFENDANTS PERPETRATED A SCHEME TO COVER UP AND CONCEAL THEIR TRUE INTENTIONS.

12] PLAINTIFFS COMMUNICATED BY EMAIL TO DEFENDANTS AND GENRE ON FEBRUARY 14, 2005 TO EXPLAIN WHY THERE WAS NO MEETING OF THE MINDS. DEFENDANTS WERE WELL AWARE NEARLY THREE WEEKS PRIOR TO PROCESSING THE SETTLEMENT CHECK THAT SUBJECTING THE UNUSED CONTRACT VALUE TO COURT ORDERS WAS A GENUINE UNRESOLVED ISSUE OF FACT AND COULD BECOME A MORE SERIOUS, COMPLEX AND CONTENTIOUS ISSUE [EXHIBIT #1].

13] PLAINTIFFS AND DEFENDANTS COMMUNICATED BY TELEPHONE ON FEBRUARY 24, 2005 ON SETTLEMENT TERMS. AT NO TIME DID DEFENDANTS OR GENRE REVEAL THEIR TRUE AND HONEST INTENTIONS TO CONTRAVENE PLAINTIFFS' HANDWRITTEN COMMENTS REGARDING THE PROPER HANDLING OF THE SETTLEMENT. AT THE TIME, THE SILENCE OF THE DEFENDANTS CONVEYED AGREEMENT TO PLAINTIFFS REGARDING THE SUM AND SUBSTANCE OF PLAINTIFFS HAND-WRITTEN NOTES THAT THE SETTLEMENT AMOUNT WOULD NOT BE SUBJECT TO COURT ORDERS BECAUSE ITS VALUE AS INTELLECTUAL CAPITAL COULD NOT POSSIBLY BE SUBJECT AS SUCH, AND WAS NEVER INTENDED TO BE SUBJECT TO GARNISHMENT. WERE THAT GENRE WOULD FACILITATE THE ABDUCTION OF AN EMBODIMENT OF INTELLECTUAL CAPITAL UNDER COURT ORDER AND SHIP HIM OR HER OUT TO A FAR-AWAY DESTINATION? WE THINK NOT. PEOPLE AND DOLLAR BILLS ARE NOT THE SAME.

14] NOT ONCE EVER DID DEFENDANTS OR GENRE RAISE ANY OBJECTIONS OR QUESTIONS ABOUT PLAINTIFFS' HAND-WRITTEN INSTRUCTIONS. AS AN ETHICAL MATTER, DEFENDANTS AND GENRE HAD AN OBLIGATION TO DISCLOSE PRIOR TO THE ERRONEOUS MEETING OF THE MINDS ON FEBRUARY 24, 2005, THEIR EXPLICIT AND PREMEDITATED INTENTION TO IGNORE THE HAND-WRITTEN COMMENTS. THEY DID NOT, AND THEREFORE FRAUDULENTLY DUPED PLAINTIFFS INTO AGREEMENT ON TERMS AND CONDITIONS THEY KNEW AFORE-HAND WOULD BE CONTENTIOUS AND UNACCEPTABLE, SECRETLY HOPING PLAINTIFFS WOULD FAIL TO NOTICE THE GARNISHMENT IN A RUSH TO DEPOSIT AND NEGOTIATE THE SETTLEMENT INSTRUMENT FOR CASH CAPITAL. ON THIS BASIS ALONE PLAINTIFFS HAVE STANDING TO VOID THE GENERAL RELEASE IF SO DESIRED.

15] DEFENDANTS' AND GENRE'S BEHAVIOR IS ALSO STRIKINGLY CONTRARY TO A RECENT HISTORY OF A COOPERATIVE RELATIONSHIP WITH PLAINTIFFS THAT INCLUDED PROVISION OF A FEW EXTRA-CONTRACTUAL BENEFITS TO THE SEVERANCE AND PROFESSIONAL SERVICES AGREEMENT. PLAINTIFFS CAN DETAIL THESE EXTRA-CONTRACTUAL BENEFITS WHEN REQUIRED.

16] PLAINTIFFS HAND-WRITTEN COMMENTS ON THE FEBRUARY 28, 2005 GENERAL RELEASE SERVED ONE PURPOSE ONLY TO REINFORCE AND CONFIRM PLAINTIFF'S EARLIER FEBRUARY 14, 2005 VIEW THAT SUBJECTING THE UNUSED INTELLECTUAL CAPITAL TO COURT ORDER "HAIRCUTS" WOULD BE CONTRARY TO THE ORIGINAL INTENT OF THE PROFESSIONAL SERVICES CONTRACT, CONTRARY TO NORMAL OPERATION OF CONTRACT LAW AND CONTRARY TO PUBLIC POLICY IN THAT THE HAIRCUT WAS CONSUMED IMMEDIATELY AS CASH CAPITAL RATHER INVESTED AS INTELLECTUAL CAPITAL FOR LARGER FUTURE BENEFITS. IN OTHER WORDS, DEFENDANTS AND GENRE PUT MY CHILDRENS' FUTURE INTERESTS AND WELFARE AT GREAT RISK. THE WHOLE POINT OF THE PROFESSIONAL SERVICES CONTRACT WAS TO DELIVER NEEDED INTELLECTUAL CAPITAL TO PLAINTIFFS TO EFFECTIVELY DEPLOY IN A NEW LINE OF WORK, EMPLOYMENT OR OTHER INCOME-GENERATING ACTIVITIES, SUCH AS AN ENTREPRENEURIAL START-UP BUSINESS. THAT IS EMINENT ENERGY PROMOTIONS. WERE THAT TO SUCCEED, WOULDN'T THAT ACCOMPLISHMENT BE RATIONAL COMMERCIAL PROOF OF THE COMPETITIVE EDGE DEFENDANTS HAVE IN THE MARKETPLACE? IN OTHER WORDS, THAT'S WHY WE DO WHAT WE DO. IT'S A GOOD THING. SOMEHOW THIS BECAME A BAD THING.

17] PLAINTIFFS DID NOT REQUEST DEFENDANTS TO PERFORM ILLEGAL ACTS AS ALLEGED BY DEFENDANTS. DEFENDANTS SHOULD BE ASHAMED TO SO NONCHALANTLY ASSERT SUCH FALSE ALLEGATIONS. THAT ALLEGATION IS ONE OF THE MOST PREPOSTEROUS TAILS ANYONE HAS EVER TRIED TO PIN ON THIS DONKEY. WHERE IS DEFENDANTS' EVIDENCE THAT "ILLEGAL CONDITIONS" IS A USUAL PRACTICE OF PLAINTIFFS? PLAINTIFFS' HAND-WRITTEN NOTES WERE TO AFFIRM THE MEETING OF THE MINDS THAT WAS, NOW ERRONEOUSLY SO IN HINDSIGHT, REACHED IN THE FEBRUARY 24, 2005 TELEPHONE CALL. EXTENSIVE DOCUMENTATION, NOTE TAKING AND HIGH LEVELS OF COMMUNICATION THROUGH WRITTEN FORM ARE CUSTOMARY PRACTICES OF PLAINTIFFS. PLAINTIFFS' FORMER EMPLOYER OF 21 YEARS CAN ATTEST TO THIS CHARACTERISTIC. IT DROVE SOME OF THE LESS ENTHUSIASTIC, UNINITIATED THOUGH INDUSTRIOUS MANAGERS, CRAZY. DEFENDANTS MAY PRAY TO READ DEVIOUSNESS INTO PLAINTIFF'S COMMUNICATIONS BUT WILL SADLY FIND NONE.

18] PLAINTIFFS RECEIVED THE SETTLEMENT CHECK ALONE IN AN ENVELOPE WITHOUT ACCOMPANYING LETTER OR OTHER ACCOUNTING DOCUMENTATION. DEFENDANTS AND GENRE INTENTIONALLY OMITTED THEIR USUAL AND CUSTOMARY ACCOUNTING STUB ENTRIES TO THE LEFT-SIDE OF THE CHECK AS PER EXHIBIT #7 OF THE COMPLAINT. FOR COMPARISON PURPOSES, PLAINTIFFS' MOST RECENT MAY 13, 2005 SEVERANCE PAYMENT FROM GENRE IS EXHIBITED. IT WAS ACCOMPANIED BY AN EXTENSIVE AND DETAILED ACCOUNTING STATEMENT FOR DEDUCTIONS, AS WERE THE OVER 500 SEMI-WEEKLY SALARY PAYMENTS PLAINTIFFS EARNED IN THEIR 21 YEAR EMPLOYMENT WITH GENRE [EXHIBIT #4].

19] PLAINTIFFS IMMEDIATELY CONTACTED DEFENDANTS BY TELEPHONE, VMAIL AND EMAIL THE SAME DAY OF RECEIPT TO OBTAIN THE USUAL ACCOMPANYING ACCOUNTING DOCUMENTATION AS PER PAGE TWO OF EXHIBIT #6 OF THE COMPLAINT. PLAINTIFFS SUSPECTED A MINOR ACCOUNTING ISSUE HAD CREPT INTO THE ADMINISTRATION PROCESS FOR PROCESSING THE CHECK AND UNINTENTIONALLY HAIRCUT THE AMOUNT.

20] PLAINTIFFS RECEIVED THE SUPPORTING DOCUMENTATION EVIDENCING THE WRONGFUL DEDUCTION FOR COURT ORDER IN A MARCH 3, 2005 EMAIL FROM DEFENDANTS AND GENRE. PLAINTIFFS CONTACTED DEFENDANTS BY EMAIL ON MARCH 5, 2005 TO REGISTER DISMAY AND ASK DEFENDANTS TO VOLUNTARILY RESOLVE THE ERROR BEFORE LITIGATION BECAME NECESSARY. DEFENDANTS AND GENRE HAVE, SADLY, IGNORED PLAINTIFFS.

21] DEFENDANTS STATE ON PAGE 7, PARAGRAPH A, THAT: "MR. WILSON ACCEPTED THIS CHECK". THIS IS A FALSE STATEMENT. THE CHECK HAS NOT BEEN "ACCEPTED" AS A FINANCIAL INSTRUMENT THAT HAS ALREADY BEEN NEGOTIATED FOR CASH CAPITAL. IT HAS BEEN "ACCEPTED" TO THE EXTENT PLAINTIFFS HAPPENED TO PLUCK THE ENVELOPE OUT OF THE DAILY MAIL. THE UNNEGOTIATED CHECK RESTS COMFORTABLY IN A SECURE AND UNDISCLOSED LOCATION. ON THE BASIS THAT THE SETTLEMENT CHECK HAS NOT YET BEEN NEGOTIATED AS OF TODAY'S MOTION DATE INTO A CASH CAPITAL STORE OF VALUE, THE SETTLEMENT AGREEMENT HAS NOT BEEN CONSUMMATED.

-14 OF 20-

22] EVEN SHOULD THE SETTLEMENT CHECK BE DEPOSITED OR NEGOTIATED BY PLAINTIFFS, ITS FRAUDULENTLY DEPRESSED VALUE WOULD REPRESENT ONLY A SMALL FRACTION OF THE TOTAL REMEDY & RELIEF DEMANDED AND WOULD NOT BAR CONTINUED CURRENT OR NEW FUTURE LEGAL ACTIONS AGAINST DEFENDANTS TO RECOVER DAMAGES COMMENSURATE WITH THE DEGREE OF THE VARIOUS DECISIONS, ERRORS AND MISTAKES, INTENTIONAL AND UNINTENTIONAL, COMMITTED. IN SHORT, DEFENDANTS AND GENRE HAVE FAILED TO FULFILL THEIR SIDE OF THE BARGAIN, WHICH WAS SIMPLY TO DELIVER DIRECTLY TO PLAINTIFFS THE UNUSED PORTION OF THE INTELLECTUAL CAPITAL IN A STORE OF VALUE OTHER THAN CASH CAPITAL SO AS TO COMPLETELY RETAIN ITS FULL VALUE ACCORDING TO THE ORIGINAL PROVISIONS OF THE PROFESSIONAL SERVICES CONTRACT, AND WILL BE PURSUED UNTIL THEIR SIDE OF THE BARGAIN HAS BEEN FULFILLED.

23] THEREFORE, DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OR JUDGMENT AS A MATTER OF LAW AND THEIR MOTION MUST BE DISMISSED IN ITS ENTIRETY.

**PLAINTIFFS' MEMORANDUM OF LAW AND FACTS IN SUPPORT OF THEIR MOTION TO DISMISS, PURSUANT TO LR, D. MASS 7.1[A][2] THE MOTION OF THE DEFENDANTS TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12[B][6]**

24] PLAINTIFFS MOVE PURSUANT TO LR, D. MASS 7.1[A][2] FOR DISMISSAL OF DEFENDANTS' MOTION BECAUSE COUNSEL AND DEFENDANTS HAVE NOT CONFERRED AND ATTEMPTED IN GOOD FAITH TO RESOLVE OR NARROW THE ISSUES RAISED IN THE COMPLAINT. THE FIRST ACT OF BAD FAITH WAS REFUSAL OF DEFENDANTS AND COUNSEL TO EVIDENCE THEIR APPARENT REPRESENTATIVE RELATIONSHIP BY WAY OF PROVIDING A RETAINER AGREEMENT. PLAINTIFFS DID NOT KNOW, AND STILL DO NOT KNOW, THE SCOPE OF THE SETTLEMENT AUTHORITY DELEGATED TO COUNSEL. PLAINTIFFS REQUESTED A COPY OF THE RETAINER AGREEMENT ON MARCH 30, 2005. DEFENDANTS AND COUNSEL REFUSE TO PROVIDE THIS EVIDENCE, THEREBY FRUSTRATING AND DELAYING JUSTICE [EXHIBIT #2]

25] IF NO RETAINER AGREEMENT EXISTS, THEN BY WHAT AUTHORITY, EVIDENTIARY OR OTHERWISE, DOES COUNSEL REPRESENT THE INTERESTS OF DEFENDANT? AND HOW ARE PLAINTIFFS TO ASSESS THE CREDIBILITY, AUTHENTICITY AND INTERESTS OF DEFENDANTS AND COUNSEL IN PROCEEDINGS BEFORE THIS COURT OR IN SETTLEMENT DISCUSSIONS? AND SHOULD A DISPUTE ARISE BETWEEN DEFENDANTS AND COUNSEL DURING PROCEEDINGS, WHAT LAW AND FORUM WOULD BE MOST APPROPRIATE THE RESOLVE ARGUMENTS AND WHAT MAY BE THE POSSIBLE AND PROBABLE IMPLICATIONS FOR PLAINTIFFS' ACTION, WHEN PLAINTIFFS, LED TO BELIEVE A TRADITIONAL CONTRACTUAL RETAINED ATTORNEY-CLIENT RELATIONSHIP EXISTS BETWEEN DEFENDANTS AND COUNSEL, DESIGN AND IMPLEMENT LEGAL STRATEGY UPON THAT CONVEYED EXPECTATION? PLAINTIFFS BELIEVE THEIR INTERESTS WOULD BE SUBSTANTIALLY DAMAGED AS A PRO SE STANDING IS FAR WEAKER AND LESS STURDY THAN THE ONE UPON WHICH SKILLED LEGAL PROFESSIONALS STAND.

26] THE SECOND ACT OF BAD FAITH WAS REFUSAL BY DEFENDANTS AND COUNSEL TO HOLD SETTLEMENT DISCUSSIONS IN PERSON FOLLOWING MARCH 30, 2005 COMMUNICATION FROM DEFENDANTS THAT THEY WERE WILLING TO "DISCUSS RESOLVING THE CLAIM". PLAINTIFFS MOVED QUICKLY TO INVITE DEFENDANTS AND COUNSEL TO MEET IN PERSON ON MARCH 30, 2005 TO RESOLVE THE ISSUE. DEFENDANTS AND COUNSEL REFUSED [EXHIBIT #2].

27] THE THIRD ACT OF BAD FAITH WAS AN OFFER OF $3,500 IN DEFENDANTS

LETTER OF APRIL 4, 2005. THIS IS BAD FAITH BECAUSE THE OFFER IS INSULTING

AND DISPARAGING TO PLAINTIFFS IN AMOUNT WHOSE SOLE PURPOSE CAN BE NONE

OTHER THAN TO HUMILIATE PLAINTIFFS. DEFENDANTS ON APRIL 4, 2005 WERE WELL

AWARE THAT PLAINTIFFS REJECTED THE EARLIER SETTLEMENT AMOUNT OF

$6,302.42 AND THEREFORE WERE WITHOUT ANY OFFER IN HAND OR IN

CONSIDERATION: $0. THE ORIGINAL SETTLEMENT WAS $12,500. THE COURT ORDER

WRONGLY CONSUMED $3,583. PLAINTIFFS CAN NOT FATHOM THE BASIS FOR A

$3,500 AMOUNT OFFER AS THE AMOUNT RELATES TO NO OTHER UNDER DISCUSSION

AND THEREFORE CONVEYS A NONCHALANT, PERFUNCTORY AND INSULTING ATTITUDE

[EXHIBIT #3].


28] THEREFORE, DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OR

JUDGMENT AS A MATTER OF LAW AND THEIR MOTION MUST BE DISMISSED.


**PLAINTIFFS' MEMORANDUM OF LAW AND FACTS IN SUPPORT OF THEIR MOTION TO DISMISS, PURSUANT TO LR, D. MASS 7.1[B][1] THE MOTION OF THE DEFENDANTS TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12[B][6]**

29] PLAINTIFFS MOVE PURSUANT TO LR, D. MASS 7.1[B][1] FOR DISMISSAL OF

DEFENDANTS' MOTION BECAUSE OTHER DOCUMENTS SETTING FORTH OR

EVIDENCING FACTS ON WHICH DEFENDANTS' MOTION IS BASED HAVE FAILED TO BE

FILED WITH THE MOTION AS REQUIRED, AND AS NEEDED TO CORRECTLY

UNDERSTAND THE ARGUMENTS AND ACTIONS IN THIS CASE. THESE DOCUMENTS

INCLUDE, BUT ARE NOT LIMITED TO, THE FOLLOWING:

THE RETAINER AGREEMENT OR OTHER DOCUMENT EVIDENCING COUNSEL'S REPRESENTATION OF DEFENDANTS

THE PROFESSIONAL OUTPLACEMENT EXECUTIVE SERVICES PROGRAM CONTRACT

THE COURT GARNISHMENT ORDER TO WHICH THE SETTLEMENT WAS SUBJECTED

THE INTERNAL ACCOUNTING RECORDS OF DEFENDANTS AND GENRE COVERING THE SETTLEMENT TRANSACTION

30] THEREFORE, DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OR

JUDGMENT AS A MATTER OF LAW AND THEIR MOTION MUST BE DISMISSED.

**PLAINTIFFS' MEMORANDUM OF LAW AND FACTS IN SUPPORT OF THEIR MOTION TO DISMISS, PURSUANT TO LR, D. MASS 15.1[A] THE MOTION OF THE DEFENDANTS TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12[B][6]**

31] PLAINTIFFS MOVE PURSUANT TO LR, D. MASS 15.1[A] FOR DISMISSAL OF

DEFENDANTS' MOTION BECAUSE COUNSEL AND DEFENDANTS HAVE FAILED TO ADD

PARTIES OF WHOM THEY HAVE ALREADY IDENTIFIED AND BECOME AWARE AS

REQUIRED ["SHALL BE SOUGHT"]. THE 2ND PARAGRAPH OF II[B] OF DEFENDANTS'

MOTION STATES: "NOTWITHSTANDING THE *FACT* THAT PLAINTIFF'S ALLEGED HARM

WAS CAUSED BY PERSONS OR ENTITIES OTHER THAN DEFENDANTS...".

32] DEFENDANTS CLEARLY KNOW THE IDENTITIES OF THIS PARTY, OR PARTIES, AND

HAVE FAILED TO AMEND THEIR MOTION TO ADD, OR TO INCLUDE IN THE ORIGINAL

MOTION.

33] THEREFORE, DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OR

JUDGMENT AS A MATTER OF LAW AND THEIR MOTION MUST BE DISMISSED.

**PLAINTIFFS' MEMORANDUM OF LAW AND FACTS IN SUPPORT OF THEIR MOTION
TO MOVE, PURSUANT TO LR, D. MASS 7.1[D]**

34] PLAINTIFFS MOVE PURSUANT TO LR, D. MASS 7.1[D] FOR REQUEST FOR

ORAL ARGUMENT BELIEVING THAT ORAL ARGUMENT WILL ASSIST THE COURT IN

GAINING A BETTER UNDERSTANDING OF THE UNDERLYING ECONOMIC ISSUES,

WHICH DROVE THE LEGAL ISSUES, MORE QUICKLY THAN BY WRITTEN WORD

ALONE, THEREBY EXPEDITING THE RENDERING OF JUSTICE.


**CONCLUSION**
35]PLAINTIFFS PRAY FOR THE RELIEF & REMEDY PLEADED IN ITS COMPLAINT.



RESPECTFULLY SUBMITTED,


PLAINTIFF #1                                    PLAINTIFF #2
SIGNATURE *Bruce Wilson*, Pro Se               SIGNATURE *Bruce Wilson*, Pro Se
DATED *May 26, 2005*                            DATED *May 26, 2005*

BRUCE WILSON                                    EMINENT ENERGY PROMOTIONS
351 PLEASANT STREET                             BRUCE WILSON, PRESIDENT
SUITE B . PMB 352                               351 PLEASANT STREET
HAMPSHIRE COUNTY                                SUITE B . PMB 352
NORTHAMPTON, MA 01060                           HAMPSHIRE COUNTY
413.262.8857 MOBILE                             NORTHAMPTON . MA . 01060
                                                413.262.8857 MOBILE

**EXHIBIT #1**

Yahoo! Mail - eminentenergy@yahoo.com

Page : of 5

# YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **Date:** | Mon, 14 Feb 2005 05:53:43 -0800 (PST) |
| **From:** | "bruce wilson" <eminentenergy@yahoo.com> |
| **Subject:** | eminent energy |
| **To:** | "Barbara Barra" <barbara_barra@lhh.com> |
| **CC:** | "joe brandon" <jbrandon@genre.com>, "zoe hopkins" <zhopkins@genre.com>, "paul O'Donnell" <Paul_O'Donnell@lhh.com>, "paul O'Donnell" <Paul_ODonnell@lhh.com> |

i agree with your statement barbara, that it would have been preferable to speak directly, and perhaps we still can, to mitigate further damage that may arise from your decision.

however, time is no ally to any party involved with this matter. you may shortly appreciate that the best interests of lhh rest in settling this matter voluntarily with a before tax cash payment equal to the unused portion of the services contract.

i estimate this to be 100% of 72% of some initial contract base amount (lhh has denied my two requests for a copy of the services contract, so i do not know the initial contract amount, or how it was to have been billed or earned over the twelve months).

it appears to me that lhh has a choice of the lesser of two business outcomes (i believe lhh has a business decision to make in this matter), a less costly voluntary settlement, or a more costly, involuntary, court-imposed settlement. i will briefly explain, and hope i can do so sufficiently for you.

i do not have any quarrel with your decision to terminate. the yes or no decision component is yours to make, though questions of legality and agency law arise.

however, the timing component of the decision has caused me financial damage. as you know, lhh was in the same decision-critical component position three months ago as it was three weeks ago. both were account decision points.

then, my former account representative, zoldy, and i, agreed to work along a slightly customized menu of lhh services, after she declined and rejected my invitation and opportunity to her to walk on the deal if she did not believe lhh could reasonably meet my needs. she did not walk, and i was happy with my relationship with zoldy and wright, and the team we assembled. the value of the services they were providing had become an integral resource to my new for-profit program/business. i was relying on lhh for essential inputs for my business, without which, i would have to shut down or slow down the work.

the implementation component of your decision, in putting the asset back to gen re, voids my private contractual property right to that asset, arising as a signatory to the severance agreement. i have lost personal and professional use of an integral asset.

these lost opportunity costs have value to me. for example, as you know, the launch of my business has been delayed at a costly time of the calendar as spring and summer concert season is in full swing. i have only a limited amout of time under the severance agreement by which to generate replacement income for my welfare, and those of my children.

your instructions on the implementation of your decision places me in an adverse

**Yahoo! Mail - eminentenergy@yahoo.com**

position to gen re. gen re gained control over 100% of an asset that was previous to your instructions, 100% my property to use. the lhh services contract would confirm if gen re gained control legally and contractually, or illegally and noncontractually, this asset from lhh.

your instructions put this asset in play, exposing it to total loss, to adverse parties with interests in the asset in pursuit. should any of these parties gain control over the value of the asset, the proceeds will not be used for the benefit of my welfare and not for the welfare of my children.

in gen re's possession, then, does this put impose an obligation on gen re to safeguard that asset for me and my children? what if they are unable to do so? what of my contractual interest that existed prior to the put option exercise? does gen re have the freedom to credit this asset back to me given their freedoms are restricted by various income and asset court orders to which they are subject?

how does voiding this one clause impact the term of the entire severance agreement? does it give gen re an option to terminate the agreement? if so, does that allow gen re to cease payments while other aspects continue? how would that serve the welfare of my children, of whom i am the sole provider?

these few speculations are only a smidgeon of a more complete portfolio of questions that naturally arise from the decision. i suspect an attorney or two could be helpful to resolving these for you.

the loss of use of this asset, or its financial value equivalent, has injured me, and continues to injure me, as well as damage the interests of those aligned with me, for example, my children.

barbara, i do not want an adverse position with gen re. i like these people and respect them. they have extended courtesies to me. and i remain dependent on them for nine more months of severance payments that do not need to be put at risk. my interests need to be aligned with gen re's. i have ways to accomplish this.

i have a lengthy motion nearly finished that provides the comprehensive documentation required for an order to show cause against lhh as to why you should not compensate me for the damages inflicted so that, ultimately, the financial security and welfare of my children are safeguarded.

some may have chosen to play hardball. they would have filed this motion last week, and offered to withdraw it under certain conditions.

instead, i chose to write to suggest there are ways to avoid the litigation. i actually want you, barbara, and lhh to be an ally at some time, as i need the help and support. more court time does not accomplish that goal. and neither do our interests misaligned.

so i did not yet file this motion. but barbara, you must appreciate i will have to file this motion, shortly, if i am to avoid legal damages against me, personally and professionally, for failing to protect this asset for the long-term welfare of my children, as well as current income for their financial security.

i would be happy to discuss the broader parameters in which you made your decision. however, from the complete file review you performed, as you note below in your email, you presumably know these already, as well as the total account history, which was beginning to work well under zoldy and wright until you initiated an account representative change, unilaterally, and without advance notice or my input. the series of snafus exhibited by lhh personnel in the three weeks since that change have been little amusing, definitely frustrating and costly to me as lhh was taking net economic value out of me in the relationship by consuming my time unproductively.

**Yahoo! Mail - eminentenergy@yahoo.com**                                              Page 3 of 5

i found the new account representative, joudy, unprepared to work with me. i simply
could not afford the cost of the time to get him up to speed. account preparation at
the time of an account transition is your job and his job to do, not mine as the
client. i believe it was his second insistence that i come use an "office" lhh had
available to me, both declined as i have an office to use already, which cemented
the notion in my mind that he wasn't listening to me or understanding my needs.

the young women "from corporate" with whom i spoke was as similarly ill-prepared,
not only about my needs and history with lhh, but with lhh services such as
seminars. for example, she was unable to tell me what i would learn at one of your
seminars (think it was startups or entrepreneurship (therefore i was unable to
evaluate the net value impact to me of attending).

and i did honestly become a little concerned with the odd audio emanating from your
efforts to change lines or phones or something when we first spoke, as well as the
extraordinary time it took you to accomplish the task. i don't believe i accused you
barbara of recording our telephone call. i believe i merely asked you if you did.
you are free to take offense to my neutral question if you like, though i wonder how
many opportunities you entertain to reach the second question with such people.

barbara, i suspect you do not possess important account history information. i could
have remedied that prior to your decision. it may have influenced your decision.

prior to your account representative change, i was receiving the customized mix of
professional and administrative assistant services i need at the moment (about 80%
aa, 20% prof). this small team of three was just starting to work well in my
opinion, and i have years of training and education in team leadership from my years
at gen re against which to evaluate teamwork. i don't agree with you that lhh
couldn't meet my needs. it did, but you voided the deal three weeks ago.

from your review of my file, you presumably know about the hornet's nest of
litigation now sitting at the appellate division of the supreme court of the state
of new york, soon headed to the upper bench. and you know this is a longstanding,
complex, expensive, multi-party, multistate, acrimonious, ruthlessly street-fought
litigation war. and it appears it is in the best interests of lhh to voluntarily
become ensnared in this thicket of trouble.

well, ok, if you say so...

barbara, i hope i am mistaken in my analysis and understanding, because i value
investing my time and resources into starting and operating a new business (teenage
suicide prevention program) more than struggling through fresh new pro se
litigation.

so pls, educate me as to why my analysis and understanding is not correct.

i intend to file the motion mid-week. this should provide you enough time to figure
out what is in the best interests of lhh. as i said earlier, i have some ideas that
could mitigate the risk for all parties concerned. i will only share these if you
are earnest about the matter. otherwise, the courts usually handle these matters in
an earnest manner.

regards,
bruce wilson

--- Barbara Barra <barbara_barra@lhh.com> wrote:

> Hello, Bruce.
>

Mon 2-14-05



**EXHIBIT #2**

Yahoo! Mail - eminentenergy@yahoo.com                                         Page 1 of 4

**YAHOO! MAIL**                                                        Print - Close Window

| Date: | Wed, 30 Mar 2005 13:11:48 -0800 (PST) |
|---|---|
| From: | "bruce wilson" <eminentenergy@yahoo.com> |
| Subject: | Re: FW: Jackson|Lewis.com - Request for information. |
| To: | "Greenberg, Richard I. (NYC)" <GreenbeR@JacksonLewis.com> |
| CC: | "Barbara Barra" <barbara_barra@lhh.com>, "joe brandon" <jbrandon@genre.com>, "zoe hopkins" <zhopkins@genre.com>, "paul O'Donnell" <Paul_O'Donnell@lhh.com>, RosenPhi@JacksonLewis.com |

richard, your decision is unfortunate, and your behavior speaks to me, of a lack
professionalism, a lack of a sense of urgency and a lack of seriousness based up
the representations made in your two vmails to me

based on my counsel, i do not believe this is a minor thousand dollar matter

this is a potential multi-million dollar matter with potential to ensnare more
parties and interests than you might know, including lhh, jackson lewis, adecco,
re and berkshire hathaway

you should be able to figure out how that is and connect the contractual dots

telephone calls will not suffice as the means of communication unless they are
recorded and originals of the recordings can be immediately provided to all part
following the recording

you make no such representations

you might review your lhh file again for a history of these prior communication
issues

you admit to having no retainer agreement; therefore, you formally represent no
one's interest, other than you own

you admit to having no written parameters for settlement discussions; therefore,
have no real or practical authority to do anything

you admit to having no standing to negotiate

i have standing and authority to arrange settlement terms immediately

therefore, my conclusions are that:

[1] you are wasting my time
[2] you appear to be perpetrating unethical behavior or at the least seeking to
me on false pretenses into revealing information i may or may not want to reveal
[3] you have misrepresenting your credentials and standing to me
[4] i am hoping you are not colluding with lhh to further defraud me and degrade

http://us.f300.mail.yahoo.com/ym/ShowLetter?box=Sent&MsgId=7108_14...    3/30/2005

interests of my children

the additional time wasted by you and jackson, lewis, from the date of the actic
is being added to the damages sought

i will discuss in person, tonight, with someone who has the standing, authority
properly represents the interests of the parties involved

i would encourage you to find someone who has standing and authority

i am not speaking by telephone with someone who has no power, no standing and no
identity in this matter


--- "Greenberg, Richard I. (NYC)" <GreenbeR@JacksonLewis.com> wrote:
> Sir,
>
> I received your telephone message.
>
> As I noted previously, we are counsel to Lee Hecht Harrison.     There
> is no formal retainer agreement to forward or anything of that ilk.   Nor
> are there are written parameters in regard to settlement discussions.
>
> I am authorized to engage in settlement discussions with you on behalf
> of LHH...I will have Barbara Barra send you an e-mail confirming that
> Jackson Lewis represents LHH in regard to your claim
>
> Unfortunately, I am unable to meet you for dinner but I believe in a
> brief telephone conversation we can determine whether this matter can be
> settled or whether we just need to proceed with the litigation.
>
> I also do not want to spend an unnecessary amount of time going over
> things...I just want to see what you are interested in receiving and
> make the determination if LHH can meet your demand.
>
> I can be reached at 212-545-4080 or I can call you.
>
> Thank you.
>
> Richard
>
> -----Original Message-----
> From: Greenberg, Richard I. (NYC)
> Sent: Tuesday, March 29, 2005 3:27 PM
> To: 'bruce wilson'
> Subject: RE: Jackson|Lewis.com - Request for information.
>
> Sir,
>
> There is nothing illogical.

**Yahoo! Mail - eminentenergy@yahoo.com**                    **Page 3 of 4**

```
>
> I am asking you if you would like to engage in settlement discussions
> prior to engaging in a full-fledged litigation.
>
> If you do not, please so advise.
>
> If you do, please give me a call and advise of any demand.
>
> Thank you.
>
> Richard
>
> -----Original Message-----
> From: bruce wilson [mailto:eminentenergy@yahoo.com]
> Sent: Tuesday, March 29, 2005 3:26 PM
> To: Greenberg, Richard I. (NYC)
> Subject: RE: Jackson|Lewis.com - Request for information.
>
> not sure how to respond to your question
>
> it is illogical
>
>
>
> --- "Greenberg, Richard I. (NYC)" <GreenbeR@JacksonLewis.com> wrote:
> > Mr. Wilson,
> >
> > I hope all is well.
> >
> > I would like to discuss with you whether you are interested in
> > potentially resolving your claim  before this becomes a full-fledged
> > litigation.
> >
> > If so, please give me a call at 212-545-4080.
> >
> > I would like to work with you to resolve this amicably.
> >
> > Richard
> >
> >    _____
> >
> > From: eminentenergy@yahoo.com [mailto:eminentenergy@yahoo.com]
> > Sent: Tuesday, March 29, 2005 3:09 PM
> > To: Greenberg, Richard I. (NYC)
> > Subject: Jackson|Lewis.com - Request for information.
> >
> >
> >  <http://www.jacksonlewis.com/images/logo/JL-logo.gif>
> > bruce wilson was visiting the Jackson Lewis website and sent the
> > following message requesting information.
> > Message:
```

**Yahoo! Mail - eminentenergy@yahoo.com**                    **Page 4 of 4**

```
> >    _____
> >
> > believed you left vmail today some of this can be done by email what
> is
> > it that you want? bruce
> >
> >    _____
> >
> > Click the following to reply to bruce wilson by email
> > eminentenergy@yahoo.com
> >
>
> bruce wilson . president
> eminent energy promotions
> 351 pleasant street
> suite b . pmb 352
> northampton . ma . 01060
> 413 . 262 . 8857 mobile
> eminentenergy@yahoo.com
>
>
>
>
>
>
>
> _____
> Do you Yahoo!?
> Yahoo! Mail - 250MB free storage. Do more. Manage less.
> http://info.mail.yahoo.com/mail_250
>
>
>


  bruce wilson . president
  eminent energy promotions
  351 pleasant street
  suite b . pmb 352
  northampton . ma . 01060
  413 . 262 . 8857 mobile
  eminentenergy@yahoo.com
```

```
  _____
  Do you Yahoo!?
  Make Yahoo! your home page
  http://www.yahoo.com/r/hs
```

**EXHIBIT #3**

Representing Management Exclusively in Workplace Law and Related Litigation

# jackson lewis

Attorneys at Law

| Jackson Lewis LLP | ATLANTA, GA | LOS ANGELES, CA | SACRAMENTO, CA |
| 59 Maiden Lane | BOSTON, MA | MIAMI, FL | SAN FRANCISCO, CA |
| New York, New York 10038 | CHICAGO, IL | MINNEAPOLIS, MN | SEATTLE, WA |
| Tel 212 545-4000 | DALLAS, TX | MORRISTOWN, NJ | STAMFORD, CT |
| Fax 212 972-3213 | GREENVILLE, SC | NEW YORK, NY | WASHINGTON, DC REGION |
| www.jacksonlewis.com | HARTFORD, CT | ORLANDO, FL | WHITE PLAINS, NY |
| | LONG ISLAND, NY | PITTSBURGH, PA | |

WRITER'S DIRECT DIAL
(212) 545 - 4080

April 4, 2005

**BY FEDERAL EXPRESS AND
CERTIFIED MAIL, RETURN
RECEIPT REQUESTED**

Mr. Bruce Wilson
351 Pleasant Street
Suite B – PMB 352
Hampshire County
Northampton, Massachusetts 01060

> Re: Wilson, et al. v. Lee Hecht Harrison, et al.
> 05-30067-MAP

Dear Mr. Wilson:

As I have advised you this Firm is counsel to Lee Hecht Harrison. I regret that we were unable to speak by phone in order for me to convey Lee Hecht Harrison's offer to settle the above-referenced litigation pending in the United States District Court. Please be advised that Lee Hecht Harrison is willing to provide you with a net payment of Three Thousand Five Hundred Dollars ($3,500) to resolve this case. Of course, such payment would be contingent on your withdrawal of the pending action and execution of a standard release of claims.

If you are interested in this offer, please contact me at the above number. Thank you.

Sincerely,

JACKSON LEWIS LLP

Richard I. Greenberg

cc:    Ms. Barbara Barra (privileged and confidential)

**EXHIBIT #4**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER - THE BACK CONTAINS AN ARTIFICIAL WATERMARK

**Gen Re.**

05/13/2005                                          D157107

Financial Centre, 695 East Main Street, Stamford CT 06901

**ADVICE OF DEPOSIT - NON-NEGOTIABLE**                    $2,811.25

HDQ                    307A-1-100
BRUCE L WILSON
351 PLEASANT STREET
SUITE B - PMB 352
NORTHAMPTON, MA 01060

# NON-NEGOTIABLE

---

▲ ——————————— REMOVE DOCUMENT ALONG THIS PERFORATION ——————————— ▲

| Employee | | | Id | Social Security | Status | Exemptions/Allowances | | Number |
|---|---|---|---|---|---|---|---|---|
| BRUCE L WILSON | | | 200022 | | US-M / CT-C | US-$700.00 CT-0/0 $350 | | D157107 |
| Code | Paygroup | Division | Department | Hire Date | Period Start | Period End | | Pay Date |
| GRC | 1 | 01 | GRC | 11/28/83 | 05/01/05 | 05/15/05 | | 05/13/05 |

| Taxable Earnings | Rate | Units | Current | Year To Date | Direct Deposit Accounts | | Amount |
|---|---|---|---|---|---|---|---|
| Severance Pay | | | 7,462.30 | 79,660.70 | Checking  25030612311 | | 2,811.25 |
| Total | | | 7,462.30 | 79,660.70 | | | |

| Taxes | | Current | Year To Date |
|---|---|---|---|
| Federal Income Tax | | 700.00 | 7,000.00 |
| Social Security (FICA) | | 456.25 | 4,661.21 |
| Federal Medicare | | 106.70 | 1,341.57 |
| Connecticut Income Tax | | 701.27 | 7,289.76 |
| Total | | 1,964.22 | 20,292.54 |

| Pre-Tax Deductions | Current | Year To Date |
|---|---|---|
| Medical | 80.00 | 720.00 |
| Dental | 23.50 | 211.50 |
| Total | 103.50 | 931.50 |

| After-Tax Deductions | Current | Year To Date |
|---|---|---|
| Child Support | 2,583.33 | 32,587.47 |
| Total | 2,583.33 | 32,587.47 |

| W2 Gross | 7,358.80 | 78,729.20 |
|---|---|---|

| Net Pay | 2,811.25 |
|---|---|

General Reinsurance Corporation  -  Financial Centre, 695 East Main St.  Stamford,  CT  06901

National Account Services
ProBusiness Division